The **SHAWNEE STATE BANK,**
Appellee,

v.

**UNITED STATES of America,**
Appellant.

No. 83–1351.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1983.

Decided May 29, 1984.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, William S. Estabrook, Stanley S. Shaw, Jr., Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellant.

Don A. Peterson, Brenner, Lockwood & Peterson, Kansas City, Mo., Lewis A. Heaven, Jr., Bennett & Heaven, Shawnee, Kan., for appellee.

Before ROSS, ARNOLD and BOWMAN, Circuit Judges.

PER CURIAM.

The United States appeals from a judgment of the District Court granting priority to a lien of the Shawnee State Bank (Shawnee Bank) over federal tax liens. In dispute is the right to an amount representing certain accounts receivable acquired by the common debtor of both lienholders more than forty-five days after the filing of notice of the federal tax liens. The United States contends that the District Court incorrectly applied provisions of the Internal Revenue Code of 1954, 26 U.S.C. §§ 6322 and 6323(c), and that Shawnee Bank consequently was awarded $5,433.15, plus interest from 1977, to which it was not entitled. We agree with the United States's contention. Accordingly, we reverse the District Court's determination and remand the case for entry of judgment in favor of the United States as to the entire amount of accounts receivable acquired by the debtor more than forty-five days after the filing of notice of the initial federal tax liens.

The taxpayer-debtor involved in this action is Convalescent Services, Inc. (Convalescent), which operated a nursing home in Kansas City, Missouri. The accounts receivable at issue are payments owed to Convalescent by the State of Missouri under an agreement between them made pursuant to Title XIX of the Social Security Act. This agreement required the State to reimburse Convalescent for care provided by it to qualified patients upon billing in accordance with forms provided by the State Division of Family Services. The parties stipulated in the District Court that the amounts due from the State for the services performed by Convalescent constituted accounts receivable.

In January 1977 Shawnee Bank loaned Convalescent $50,000. The loan was evidenced by a note listing contract rights, accounts receivable, and general intangibles as security. Shawnee Bank filed a financing statement in the manner prescribed by Missouri's codification of the Uniform Commercial Code. *See* Mo.Rev. Stat. §§ 400.9–401, –402. Convalescent has not repaid this loan, which is long overdue.

The United States's interest in this matter arose through Convalescent's failure to remit to the Internal Revenue Service (IRS) the amounts shown due on Convalescent's Employer's Quarterly Tax Returns and Unemployment Tax Returns for the periods ending December 31, 1976 through December 31, 1977. Based on these returns, the government made assessments against Convalescent for various unpaid federal taxes. Under the Internal Revenue Code, the making of such assessments automatically imposed federal tax liens upon all Convalescent's property. *See* 26 U.S.C. §§ 6321, 6322. Additionally, the United States filed four separate notices of federal tax liens against Convalescent with the Jackson County, Missouri Recorder of Deeds. The first two notices were filed August 1, 1977; the third was filed September 19, 1977; and the fourth was filed November 4, 1977.

On December 19, 1977 the IRS levied upon the State of Missouri for federal taxes due from Convalescent in the amount of $63,221.72. On the date of the levy, the State owed Convalescent $53,361.55 for nursing care provided pursuant to their agreement during the months of February through December 1977. The IRS, not yet aware of Shawnee Bank's financing agreement with Convalescent, released $11,000 of these receivables from its levy, and that amount was paid to Convalescent. The remainder of the amount that the State owed to Convalescent, $42,361.55, was paid to the IRS.

In January 1978, Shawnee Bank notified the United States of its secured interest in Convalescent's accounts receivable and demanded that the funds received by the IRS from the State be paid to the Bank. Upon the United States's refusal to comply with that demand, Shawnee Bank instituted this wrongful levy action in the District Court.

On cross-motions for summary judgment, the District Court granted partial relief to each party. We shall confine our

discussion to the sole aspect of the District Court's decision that is in dispute on this appeal, namely, the question of which of the parties has a superior right to those accounts receivable acquired by Convalescent more than forty-five days after the first federal tax liens were filed.

The District Court correctly determined, and the parties do not here dispute, that Convalescent earned the accounts receivable in question ratably for each day it performed services under its agreement with the State and, further, that upon compliance with applicable filing requirements secured creditors acquired a perfected security interest in these amounts as Convalescent earned them. The District Court also correctly ruled that § 6323(c)(2)(B) gave priority to Shawnee Bank's lien over the competing tax liens for a period of forty-five days after the filing of notices of the August 1 federal tax liens. Shawnee Bank thus had priority to the accounts receivable earned by Convalescent from August 1 through September 15, as well as to the accounts receivable earned before August 1, and the District Court so held. The government concedes that this part of the District Court's holding is correct.

The United States contends that the District Court erred, however, in granting priority to the lien of Shawnee Bank with respect to receivables acquired by Convalescent between September 16 and November 3. We agree, and therefore we reverse that part of the judgment of the District Court that gave Shawnee Bank priority to

the receivables acquired between the dates just mentioned.

■ Section 6322 provides that the tax lien arising under § 6321 continues in effect until the liability "is satisfied or becomes unenforceable ...." The lien attaches to all the property of the defaulting taxpayer, including property acquired by the taxpayer after the lien arises. *Glass City Bank v. United States,* 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945); *Rice Investment Co. v. United States,* 625 F.2d 565, 568 (5th Cir.1980).

Before 1966, the requirement of choateness, *see United States v. Pioneer American Insurance Co.,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963), generally operated to prevent a nonfederal lien from gaining priority over a federal tax lien with respect to property acquired by the debtor after the tax lien had arisen, even though the nonfederal lien antedated the tax lien. Congress addressed this problem in the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, 80 Stat. 1125. Specifically, Congress mitigated the harshness of the choateness rule by amending § 6323(c) to provide a limited period of relief—the forty-five-day safe-harbor provision—from federal tax lien priorities for commercial lenders whose loans are secured by after-acquired property. *See Rice Investment Co.,* 625 F.2d at 569 (citing S.Rep. No. 1708, 89th Cong., 2d Sess. *reprinted in* 1966 U.S. Code Cong. & Ad. News 3722, 3729).[1] Under this provision, the lien of

---

1. The operation of § 6323(c) is somewhat complex. Specifically the provision extends priority to certain types of security interests which come into existence after a federal tax lien is filed. But such priority is extended only to a security interest in "qualified property" which is "covered by the terms of a written agreement entered into before the tax lien filing ...." *See* § 6323(c)(1)(A). The "written agreement" must constitute "a commercial transactions financing agreement, a real property construction or improvement financing agreement, or an obligatory disbursement agreement." *See* § 6323(c)(1)(A)(i)–(iii). Finally, the security interest must be one which "is protected under local law against a judgment lien arising, as of the time of the lien filing, out of an unsecured obligation." *See* § 6323(c)(1)(B).

A "commercial transactions financing agreement," § 6323(c)(1)(A)(i), is, in general, one which is secured by "commercial financing security." *See* § 6323(c)(2)(A)(i). "Commercial financing security" includes accounts receivable such as those in this case. *See* § 6323(c)(2)(C)(ii). An additional requirement must be met, however, in order for accounts receivable to be "qualified property," § 6323(c)(1)(A), when the underlying "written agreement," *id.,* is "a commercial transactions financing agreement." § 6323(c)(1)(A)(i). In such a case the accounts receivable must have been acquired by the taxpayer (here Convalescent) within 45 days of the filing of the federal tax lien. *See* § 6323(c)(2)(B).

the private lender obtains priority to receivables like those at issue in the present case only to the extent that they are acquired by the debtor prior to, and within forty-five days after, the filing of a competing federal tax lien. Thereafter, the federal tax lien has priority with respect to such receivables. *See Texas Oil & Gas Corp. v. United States*, 466 F.2d 1040, 1054 (5th Cir. 1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973); *Rice Investment Co., supra.*

■ In the case at bar, the amount of the August 1 federal tax liens was $22,880.94. Through September 15, receivables acquired by Convalescent totaled $12,331.70. The District Court correctly awarded that amount to Shawnee Bank. Between September 16 and November 3, Convalescent acquired another $5,433.15 in accounts receivable from the State of Missouri. That amount was accrued after the forty-five-day safe harbor period of § 6323(c) and should have gone toward satisfaction of the August 1 federal tax liens. Those liens were subordinated only for a period of forty-five days. After September 15 they were fully operative. *See* § 6322; *Texas Oil & Gas Corp. v. United States, supra.*

■ The District Court's error lies in its having treated the forty-five-day safe-harbor period of the September 19 federal tax lien as subordinating for an additional forty-five days the August 1 federal tax liens. The latter, however, were unsatisfied, they were fully in force, the forty-five-day safe-harbor period with respect to them had expired, and that period was not extended by the filing of the additional tax lien on September 19. To hold otherwise would be to place the government in a worse position for having filed the additional tax lien than if it had not so filed. That cannot be the law, and indeed we hold that it is not. Specifically, we hold that, once the safe-harbor period of the August 1 tax liens expired on September 15, those liens were

entitled to priority to the accounts receivable thereafter earned by Convalescent.

The effect of the District Court's holding was to extend the forty-five-day safe-harbor provision to ninety-four days. This clearly contravenes § 6323(c), which limits the period of private lien priority over unsatisfied federal tax liens to forty-five days. The District Court had no discretion to extend this statutory safe-harbor period, and in so doing it committed error as a matter of law.

In seeking to justify the District Court's ruling, Shawnee Bank argues that when the August 1 tax liens were satisfied, it was again entitled to participate in the accounts receivable. This argument overlooks the fact that, upon satisfaction of the August 1 tax liens, which at the earliest occurred when the government received the proceeds of its December 19 levy, still in full force was the September 19 tax lien. Once its forty-five-day safe-harbor period had run, the September 19 tax lien had priority over the balance of the accounts receivable earned by Convalescent. For reasons we already have stated, between September 16 and November 3 the August 1 tax liens (which totaled $22,880.94) were entitled to priority over the $5,433.15 of accounts receivable earned by Convalescent during that period. When the forty-five-day safe-harbor period of the September 19 tax lien expired on November 3, the amount of fully enforceable and unsatisfied federal tax liens increased by $25,687.63, the amount of the September 19 lien. Thus, on November 4, there were outstanding some $48,568.57 in fully enforceable and unsatisfied tax liens. The accounts receivable ultimately seized and retained by the United States in December 1977, totaling $42,361.55, were subject to the payment of $12,331.70 (representing accounts receivable earned by Convalescent through September 15) to which Shawnee Bank's lien had priority, leaving a balance of only $30,029.85—less than enough to satisfy the tax liens.[2] Accordingly, the Au-

---

**2.** Convalescent apparently acquired no further accounts receivable after the IRS levy in December 1977.

gust 1 and September 19 tax liens combined to bar any further participation by Shawnee Bank in the accounts receivable earned after September 15.

We have considered carefully the other arguments of Shawnee Bank and find them to be without merit. Because of the District Court's failure to allow the United States to retain the $5,433.15 of accounts receivable acquired by Convalescent between September 16, 1977 and November 3, 1977, we reverse and remand for modification of the judgment below in conformity with this opinion.