Thomas HOGGARTH, Gerald Hoggarth, Kenneth Hoggarth, Duane Hoggarth, a partnership d/b/a Hoggarth Bros. and Scott Hoggarth, for himself, Plaintiffs and Appellants,

v.

Steven SOMSEN and Sherry Somsen, Defendants and Appellees.

Civ. No. 920178.

Supreme Court of North Dakota.

Feb. 23, 1993.

David E. Nething (argued), Jamestown, for plaintiffs and appellants.

James A. Reisnour (argued) of Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for defendants and appellees.

MESCHKE, Justice.

Thomas, Gerald, Kenneth, and Duane Hoggarth, a partnership doing business as Hoggarth Brothers, and Scott Hoggarth, individually, appeal from a declaratory judgment determining that their interests in the SE¼ of Section 32, Township 144, Range 62, in Stutsman County were subordinate to a federal tax lien, and that Steven and Sharon Somsen acquired title to that land free of the interests of Hoggarth Brothers and Scott. We affirm in part, reverse in part, and remand for further proceedings.

On March 24, 1987, the Internal Revenue Service filed notice of a federal tax lien against Walter Johnson in Stutsman County for Johnson's personal income taxes for 1981 and 1982. See NDCC 35-29-01, 35-29-02, and 35-29-04. On September 19, 1990, the IRS filed a certificate of release for that tax lien. See NDCC 35-29-04(2) and (3). Meanwhile, on August 26, 1988, Johnson, the record title owner of the SE¼, leased that farmland to Scott, and Johnson assigned his right to the rental payments to Hoggarth Brothers in exchange for an option to purchase a different parcel of land from them. The written lease ran from September 1, 1988, through November 30, 1993, and required Scott's $5,145 annual rental payments to be made directly to Hoggarth Brothers on March 15 of each year. The lease and the assignment of rents were not recorded.

On September 19, 1988, the IRS assessed employer's quarterly federal taxes against Johnson for the periods ending September 30, 1987; December 31, 1987; March 31, 1988; and June 30, 1988. Pursuant to the September 19, 1988 assessment, the IRS filed notices of that tax lien against Johnson in Stutsman County on July 20, 1989, and on September 5, 1989. The IRS seized the SE¼ pursuant to the September 19, 1988 assessment and thereafter furnished Johnson with a notice of sale for that land. At the sale on July 10, 1990, no one bid the predetermined minimum price for that land, and it was declared sold to the United States for the minimum price. The IRS then issued a certificate of sale to the United States. Johnson failed to redeem the property, and on March 8, 1991, the IRS issued a deed to the United States. On the same day, the United States issued a quitclaim deed to Somsens.

Although Scott knew that a quitclaim deed had been issued to Somsens, he made his annual rental payment to Hoggarth Brothers on March 15, 1991. Somsens then served Scott with a notice to quit, claiming the lease had been terminated by the United States' deed to them and by Scott's failure to make the rental payments to them. Hoggarth Brothers and Scott sued Somsens, seeking a declaration of their rights under the lease and the assignment of rents. They alleged that Somsens were not entitled to Scott's annual rental payments and possession of the land until the

expiration of the lease on November 30, 1993.

The parties submitted the action to the trial court on stipulated facts. The court determined that because Hoggarth Brothers and Scott had not recorded the lease and the assignment of rents, they were not "purchasers" under IRC 6323(a), and the IRS therefore had priority over the lease and the assignment of rents. The court determined that the IRS's deed to the United States discharged the interests of Hoggarth Brothers and Scott in the land. The court concluded that because the United States had received good title to the land, Somsens also received good title regardless of their knowledge of the lease and the assignment of rents. Hoggarth Brothers and Scott appealed.

On appeal, Hoggarth Brothers and Scott do not dispute that Somsens are entitled to ownership of the land. Rather, they assert that Somsens' ownership is subject to the lease and the assignment of rents. Somsens respond that their interest in the land has priority over the lease and the assignment of rents, because of the tax lien filed on March 24, 1987, or, alternatively, because of the tax assessment on September 19, 1988, and the notices of tax lien filed on July 20, 1989, and September 5, 1989. Before considering the parties' specific arguments, we sketch the statutes and principles affecting priorities between federal tax liens and competing interests in a taxpayer's property.

Under IRC 6321, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to" the taxpayer. A federal tax lien attaches to a taxpayer's property "at the time the assessment is made" and "continue[s] until the liability for the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time." IRC 6322.

Because a federal tax lien is effective on the date of assessment regardless of whether it has been filed, it has been aptly described as a "secret lien." *United States v. Security Trust & Savings Bank,* 340 U.S. 47, 53, 71 S.Ct. 111, 114, 95 L.Ed. 53, 58 (1950) (Jackson, J., concurring). The secret nature of the federal tax lien prompted Congress to enact legislation to protect certain third parties whose interests in the taxpayer's property arise before a tax lien is filed.[1] IRC 6323(a) now provides that a federal tax lien on a taxpayer's property and rights to property is not "valid as against any purchaser, holder of a

---

1. As originally enacted, the federal tax lien statutes created a truly secret lien, because there was no requirement to file the lien for priority over competing claims to the taxpayer's property. Act of July 13, 1866, 14 Stat. 98, ch. 184. Under that statute, the United States Supreme Court held that an unfiled federal tax lien was good against even a subsequent good faith purchaser of the taxpayer's property. *United States v. Snyder,* 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705 (1893). Congress subsequently enacted legislation that a federal tax lien was "not ... valid as against any mortgagee, purchaser, or judgment creditor until notice of such lien shall be filed" in the appropriate office. Act of March 4, 1913, 37 Stat. 1016, ch. 166. However, those terms were not defined, and the statutory protection afforded to a "purchaser" was generally interpreted to give priority only to a person who had given valuable consideration and had obtained a deed for the taxpayer's property before the federal tax lien was filed in the appropriate office. *United States v. Scovil,* 348 U.S. 218, 75

S.Ct. 244, 99 L.Ed. 271 (1955); *United States v. Creamer Industries, Inc.,* 349 F.2d 625 (5th Cir. 1965), *cert. denied,* 382 U.S. 957, 86 S.Ct. 434, 15 L.Ed.2d 361 (1965). See Plumb, *Federal Liens and Priorities—Agenda for the Next Decade II,* 77 Yale L.J. 605, 672 (1968); 35 Am.Jur.2d, *Federal Tax Enforcement,* § 19 (1967). In the Federal Tax Lien Act of 1966, P.L. 89–719, 80 Stat. 1125 (1966), Congress defined "purchaser" in language currently codified at IRC 6323(h)(6).

We also note that IRC 6323(b) gives "superpriorities" to certain interests which arise *after* a tax lien is filed. *See* Saltzman, *IRS Practice and Procedure,* ¶ 16.04 (2d ed. 1991).

For general discussions of federal tax liens, *see also* Saltzman, *IRS Practice and Procedure,* ¶ 14.04 et seq. (2d ed. 1991); 14 RIA's Analysis of Federal Taxes, V–6000 et seq. (1992); William T. Plumb, Jr., *Federal Tax Liens* (1972); Annot., Priority of Federal Tax Liens, 95 L.Ed. 59 (1951), Suppl. 2 L.Ed.2d 1823 (1958), 7 L.Ed.2d 904 (1962); 35 Am.Jur.2d, *Federal Tax Enforcement,* §§ 1–24 (1967).

security interest, mechanic's lienor, or judgment lien creditor until notice ... has been filed" in the appropriate office.

 Under those provisions, it is well established that state law governs the threshold determination of whether a taxpayer has "property" or "rights to property," and federal law governs the priority between a federal tax lien and competing interests in the taxpayer's state-created "property" or "rights to property." *E.g., Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). Priorities under federal law are determined by the basic principle that first in time is first in right. *Id.* Within that framework, we consider the parties' specific arguments in this case.

Relying on *United States v. Bank of Celina,* 721 F.2d 163 (6th Cir.1983) and *Peterson v. United States,* 511 F.Supp. 250 (D. Utah 1981), Somsens argue that the notice of tax lien filed on March 24, 1987, gives their interest priority over the August 26, 1988 lease and assignment of rents. Hoggarth Brothers and Scott respond that the 1987 tax lien was released on September 19, 1990, and that *Celina* and *Peterson* did not involve the release of an earlier tax lien and are not controlling. They also argue that the IRS seized and sold the land pursuant to the September 19, 1988 assessment and the notices filed in 1989, rather than the notice filed in 1987.

In *Celina,* a corporate taxpayer failed to pay employer's quarterly federal taxes, and the IRS filed three separate notices of tax liens against the taxpayer. Between the filing of the first and the second notice, a bank advanced money to the taxpayer for payroll and filed a financing statement which said that the advances were secured by a security interest in accounts receivable. After the last notice was filed, the bank, fearing an imminent levy, exercised a setoff of the taxpayer's overdue loans against the taxpayer's bank accounts. In holding that the IRS was entitled to priority over the taxpayer's bank accounts, the court said that where several notices of a tax lien have been filed as unpaid taxes accumulate, the priority of each subse-

quent notice relates back to the filing of the first notice.

In *Peterson,* a vendee admitted that his interest in a taxpayer's property was inferior to a federal tax lien filed before he acquired that interest, but argued that his interest had priority over federal tax liens filed after he acquired that interest. In rejecting that argument, the court said that the first filing gave the subsequent vendee notice of the continuously accumulating amount of the tax liability secured by the lien and that the later filings had no legal effect on priority because of the first filing. The court said that the later filings during the life of the lien acquired no independent priority of their own.

In both *Celina* and *Peterson,* the IRS did not file a certificate of release of the first notice of federal tax lien. In this case, on March 19, 1990, the IRS filed a certificate of release of the 1987 lien. Subject to exceptions not relevant to this case, a certificate of release is conclusive that the lien is extinguished. IRC 6325(f)(1)(A). Additionally, in both *Celina* and *Peterson* all the notices related to the taxpayer's failure to pay employer's taxes. Here, the 1987 notice of tax lien was for Johnson's personal income taxes, and the later assessment and notices of tax liens were for employer's quarterly federal taxes. The IRS's "Record of Seizure and Sale of Real Estate" indicates that the seizure and sale of this land was for the September 19, 1988 assessment for employer's quarterly federal taxes and that notices of liens for that assessment were filed on July 20, 1989, and September 5, 1989. In seizing this land, the IRS relied upon the September 19, 1988 assessment and did not rely on the 1987 notice. Although, as a general proposition, the actual amount secured by a tax lien is not static and continues to accumulate until the liability is satisfied [IRC 6321, 6322], we believe the certificate of release of the 1987 tax lien and the "Record of Seizure and Sale of Real Estate" for this land indicates that the competing interests in the SE¼ are governed by the assessment on September 19, 1988, and the notices filed on July 20, 1989, and September 5,

1989. Accordingly, we analyze the interests of Hoggarth Brothers and Scott under the September 19, 1988 assessment and the July 20, 1989 and September 5, 1989 notices.

Hoggarth Brothers and Scott assert that both the IRS and Somsens had knowledge of the lease and the assignment of rents before the deeds to the SE¼ were issued on March 8, 1991, and that, under NDCC 47–19–46,[2] the unrecorded lease and assignment of rents are therefore "valid under local law" against the IRS and Somsens. Hoggarth Brothers and Scott thus argue that, under IRC 6323(a), they were "purchasers" before the notices of federal tax lien were filed in 1989, and their interests in the land had priority over that tax lien. Somsens respond that because the interests of Hoggarth Brothers and Scott were not recorded, those interests are not valid under North Dakota law against a hypothetical subsequent purchaser without actual notice. Somsens thus argue that Hoggarth Brothers and Scott were not "purchasers" under IRC 6323(a), and therefore the federal tax lien has priority over their interests.

The parties do not dispute that, under North Dakota law, Johnson has a property interest in the SE¼ that is subject to a federal tax lien. The priorities in Johnson's property are determined by federal law. *Aquilino.* As relevant to this case, the federal priority statutes give the IRS priority over the interests of Hoggarth Brothers and Scott on the date of assessment, unless Hoggarth Brothers and Scott are accorded the status of a "purchaser" before the IRS filed notices of the tax lien in 1989.

 IRC 6323(h)(6) defines "purchaser" as

> a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice. In ap-

plying the preceding sentence for purposes of [IRC 6323(a)] . . .

> (A) a lease of property,
> (B) a written executory contract to purchase or lease property,
> (C) an option to purchase or lease property or any interest therein, or
> (D) an option to renew or extend a lease of property,

which is not a lien or security interest shall be treated as an interest in property.

Parties claiming the protected status of IRC 6323(a) have the burden of proving that they qualify for that protection. *Resolution Trust Corp. v. Gill,* 960 F.2d 336 (3rd Cir.1992); *Rodeck v. United States,* 697 F.Supp. 1508 (D.Minn.1988). Somsens do not dispute that, under the definition of "purchaser," Hoggarth Brothers and Scott satisfy the element of adequate and full consideration. Rather, the dispute involves whether the interests of Hoggarth Brothers and Scott are "valid under local law against subsequent purchasers without actual notice."

In *United States v. V & E Engineering & Construction Co., Inc.,* 819 F.2d 331, 335 (1st Cir.1987), the First Circuit Court of Appeals explained that phrase:

> The simplest interpretation of this phrase, as well as the interpretation most consistent with the usage of such phrases in property law, is that the interest must be able to prevail against all hypothetical subsequent purchasers. To be sure, the Berrios' interpretation of "subsequent purchasers" as referring only to *actual* purchasers does not literally contradict the wording of the section; it does, however, greatly strain its language. Under the Berrios' interpretation, the "validity under local law" of the transaction would be an issue distinct from the party's actual ability to prevail over subsequent purchasers who may or may not exist. The statute, however, speaks of the "validity" of the purchase only in terms of its validity against sub-

---

**2.** NDCC 47–19–46 says:
An unrecorded instrument is valid as between the parties thereto and those who have notice

thereof. . . .

sequent purchasers. The statute does not discuss the case of a purchase "valid" in fact in a particular situation. If the Berrios were right that Congress intended to protect such purchases against unfiled tax liens, the pertinent clause would have been worded in a manner such as the following: "an interest in property which is valid under local law and which in fact prevails over subsequent purchasers, *if any.*" By referring to "subsequent purchasers without actual notice," however, the statute clearly refers to an interest able to prevail against any hypothetical subsequent purchaser without notice.

*See also Burbano v. United States,* 723 F.Supp. 193 (E.D.N.Y.1989). In order for the interests of Hoggarth Brothers and Scott to be "valid under local law against subsequent purchasers without actual notice," their interests must prevail under local law against not only the IRS and Somsens, but against any possible purchaser without actual notice.

Under NDCC 47-19-41,[3] recording protects a conveyance against any subsequent purchaser without actual notice. However, the protection afforded by the definition of "purchaser" is not restricted solely to parties who have recorded. Instead, that definition bestows the status of "purchaser" on parties who hold an interest which is "valid under local law against subsequent purchasers without actual notice."

Open and notorious possession which is inconsistent with record title is notice to any subsequent purchaser of the rights and claims of the person in possession and, if adequate and full consideration is given, qualifies the person in possession as a "purchaser." *Engel v. Tinker Nat'l Bank,* 269 F.Supp. 199 (E.D.N.Y.1967) (in the absence of recording of conditional sales contracts, contract vendees in possession have priority over subsequent purchasers without actual knowledge); *State Fidelity Federal Savings & Loan Ass'n v. Wehrly,* 25

Ohio Misc. 221, 54 O.O.2d 314, 263 N.E.2d 801 (1970) (in the absence of recording, interest of grantee in possession is valid against all subsequent purchasers); *Claremont Terrace Homeowners' Ass'n v. United States,* 146 Cal.App.3d 398, 194 Cal. Rptr. 216 (1983) (lessee's open, notorious, exclusive, and visible possession of leased premises is notice to any subsequent purchaser or encumbrancer); *Mader v. Kallos,* 219 Neb. 579, 365 N.W.2d 408 (1985) (tenant's possession is notice of tenant's interest in the property). *See* Plumb, *Federal Liens and Priorities—Agenda for the Next Decade II,* 77 Yale L.J. 605, 673 (1968). The pertinent regulation, 26 C.F.R. 301.6323(h)–1(f)(4), also recognizes the effect of open and notorious possession:

> *Example 1.* A enters into a contract for the purchase of a house and lot from B. Under the terms of the contract A makes a down payment and is to pay the balance of the purchase price in 120 monthly installments. After payment of the last installment, A is to receive a deed to the property. A enters into possession, which under local law protects his interest in the property against subsequent purchasers without actual notice. After A has paid five monthly installments, a notice of lien for Federal taxes is filed against B in accordance with § 301.-6323(f)–1. Because the contract is an executory contract to purchase property and is valid under local law against subsequent purchasers without actual notice, A qualifies as a purchaser under this paragraph.

■ Under North Dakota law, open and notorious possession of land by a lessee is sufficient to charge other persons with knowledge of the rights of the lessee. *Farm Credit Bank of St. Paul v. Martinson,* 478 N.W.2d 810 (N.D.1991) and cases cited therein. Open and notorious possession by a lessee is sufficient to make the lessee's interest "valid against subsequent

---

**3.** NDCC 47–19–41 says:

Every conveyance of real estate not recorded shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance ... first is deposited with the proper officer for record and subsequently recorded ... prior to the recording of such conveyance....

purchasers without actual notice" and qualifies a lessee as a "purchaser."

In this case, the trial court's analysis focused solely on Scott's failure to record the lease and Hoggarth Brothers' failure to record the assignment of rents. The court concluded that those failures prevented them from prevailing under local law against any subsequent purchaser without actual notice. The court's analysis erroneously failed to consider that open and notorious possession by a lessee is sufficient to make that interest valid under local law against a subsequent purchaser without actual notice. Because the trial court's analysis was too narrow, we reverse the judgment against Scott and remand for consideration of when he went into open and notorious possession of the land in relation to the tax liens filed in 1989. In doing so, we do not preclude the court from taking further evidence to resolve that question.

█ However, Hoggarth Brothers is not a lessee, and its claim requires a different analysis. Hoggarth Brothers received an assignment of Scott's rental payments for the SE¼ in exchange for giving Johnson an option to purchase a different tract of land. Hoggarth Brothers did not record the assignment, and the partnership was not a lessee, nor was it in open and notorious possession of the land. Therefore, its interest was not valid under local law against any subsequent purchaser. Hoggarth Brothers therefore does not qualify as a "purchaser" under IRC 6323(a), and it has marshalled no argument to qualify under any of the other protected categories of IRC 6323(a).

█ The trial court properly determined that the IRS had priority over Hoggarth Brothers' interest in the land. Under IRC 6339(c), the deed of the property to the United States discharged any interests subordinate to the tax lien, and the United States acquired title to the land free and clear of the interests of Hoggarth Brothers. Generally, a bona fide purchaser of property that is subject to a prior unrecorded interest may pass good title to a subsequent purchaser who otherwise would not qualify as a bona fide purchaser. *Chergo-*

*sky v. Crosstown Bell, Inc.,* 463 N.W.2d 522 (Minn.1990); *Stonehouse v. Mersiovsky,* 67 N.D. 485, 274 N.W. 313 (1937). That filter rule protects the alienability of property and gives a bona fide purchaser the right to transfer good title to a subsequent purchaser. *Chergosky.* Under that filter rule, the Somsens obtained good title and priority over Hoggarth Brothers regardless of the Somsens' knowledge of the assignment of rents. The trial court therefore did not err in determining that Hoggarth Brothers' interest in the SE¼ was subordinate to Somsens' interest.

We affirm the district court judgment in part, reverse in part, and remand for further proceedings consistent with this opinion.

VANDE WALLE, C.J., LEVINE, J., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and served as surrogate judge for this case pursuant to NDCC 27–17–03.

Justice J. PHILIP JOHNSON, who was a member of the Court when this case was heard, did not participate in this decision.

Justice NEUMANN and Justice SANDSTROM, not being members of the Court when this case was heard, did not participate in this decision.