# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2962

_____

| | | |
|---|---|---|
| In re: Nerland Oil, Inc. | * | |
| | * | |
| ----------------------------- | * | |
| | * | |
| Superpumper, Inc., | * | |
| | * | |
| Claimant-Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Nerland Oil, Inc., | * | District of North Dakota |
| | * | |
| Debtor-Appellee. | * | |
| | * | |
| United States of America through | * | |
| The Internal Revenue Service, | * | |
| | * | |
| Creditor-Appellee. | * | |

_____

Submitted: April 16, 2002

Filed: September 12, 2002

_____

Before McMILLIAN, BOWMAN and MURPHY, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

In this Chapter 7 bankruptcy matter filed by the debtor Nerland Oil, Inc. ("Nerland Oil"), Superpumper, Inc. ("Superpumper") appeals from a final order entered in United States District Court for the District of North Dakota[1] affirming the bankruptcy court's[2] grant of summary judgment in favor of the United States, through the Internal Revenue Service ("IRS"), on the ground that federal tax liens previously assessed by the IRS against Nerland Oil took priority over a North Dakota state court judgment affirming an arbitration award enabling Superpumper to setoff its debt to Nerland Oil. See In re Nerland Oil, Inc., No. A3-01-05 (D.N.D. June 13, 2001) (memorandum and order). For reversal, Superpumper argues that the district court erred in determining that (1) Superpumper did not complete a valid setoff under state law in 1996, (2) unfiled federal tax liens prevented Superpumper's setoff of debt, and (3) Superpumper could not assert the same defenses against the IRS as it could against Nerland Oil. For the reasons discussed below, we affirm the order of the district court.

## Jurisdiction

Jurisdiction in the bankruptcy court was proper based upon 28 U.S.C. § 157(b) (transferring jurisdiction of cases arising in or related to Title 11 from district court to bankruptcy court), pursuant to 28 U.S.C. § 1334 (providing original federal jurisdiction for Title 11 bankruptcy cases). Jurisdiction in district court was proper based upon 28 U.S.C. § 158(a)(3) (enabling district court to consider interlocutory orders of bankruptcy courts). Jurisdiction in this court is proper based upon 28 U.S.C. § 158(d) (authorizing appeals from final district court judgments reviewing

---

[1]The Honorable Rodney S. Webb, Chief Judge, United States District Court for the District of North Dakota.

[2]The Honorable William A. Hill, United States Bankruptcy Judge for the District of North Dakota.

bankruptcy court appeals). The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

The parties stipulated to the following facts in the bankruptcy court's record. In the mid-1970s, Brent Nerland founded Nerland Oil, a petroleum products wholesale marketing business. Nerland Oil established a "jobber" relationship with Conoco, in which it contracted with Conoco to distribute Conoco products to Conoco retail stations and to forward credit card receivables to Conoco retail stations after Conoco processed the credit card transactions. Over time, Nerland Oil acquired several convenience stores, including a Conoco retail station and convenience store called the Dakota Fuel Stop in Jamestown, North Dakota.

In June 1995, Superpumper, an owner and operator of convenience stores, bought the Dakota Fuel Stop from Nerland Oil. To partially finance the purchase, Superpumper executed a promissory note payable to Nerland Oil in the amount of $350,000 and secured by a second mortgage on the Dakota Fuel Stop. The note required Superpumper to make quarterly payments of $7,545 to Nerland Oil at an annual interest rate of nine percent. The balance of the note was to be paid on September 30, 2000, or earlier if Superpumper sold the Dakota Fuel Stop.

As a condition of the purchase, Superpumper agreed to arrange future fuel supply and freight in a form acceptable to Nerland Oil, and therefore entered into two contracts with West Fargo Truck Stop, Inc. ("WFTS"), another company owned by Brent Nerland. Together the contracts credited Superpumper with $579,332 toward the purchase price of the Dakota Fuel Stop. The first agreement designated WFTS as the exclusive supplier of the Dakota Fuel Stop's Conoco brand fuel requirements. The second contract required WFTS to haul fuel products to various Superpumper

locations in the Red River Valley.[3]  Both contracts contained clauses requiring disputes to be submitted to binding arbitration.  Although neither contract established Nerland Oil as the Conoco jobber to service the Dakota Fuel Stop, Nerland Oil acted in that capacity.  Consequently, Nerland Oil was responsible for forwarding from Conoco to Superpumper the credit card receivables generated by the Dakota Fuel Stop.  Superpumper and Nerland Oil did not have a contract governing this relationship, but it is a well-known industry practice which is generally not recognized in writing.

By the spring of 1996, Nerland Oil began failing to remit the Dakota Fuel Stop credit card receivables from Conoco to Superpumper, and the amount of the arrearage grew over the course of the year.  As of October 31, 1996, Nerland Oil owed Superpumper $348,856.26 in credit card receivables, and Superpumper owed Nerland Oil $359,790.18 under the promissory note and mortgage.  On October 28, 1996, Superpumper terminated its jobber relationship with Nerland Oil.  At that time, Superpumper desired to apply the outstanding balance of credit card receivables against the amount due under the promissory note and mortgage held by Nerland Oil. Nerland Oil refused the proposed debt setoff.

On January 28, 1997, Superpumper commenced a lawsuit against Nerland Oil in North Dakota state court seeking to setoff the debts.  Because the contracts at issue contained arbitration clauses, the state court ordered that the  dispute be submitted to arbitration.  After Superpumper unsuccessfully appealed the arbitration order to the state supreme court, the dispute went to arbitration before a three-member panel of attorneys. On August 18, 1999, the arbitration panel granted Superpumper's request for setoff.

---

[3]The existence of these contracts is puzzling, as WFTS was not a Conoco jobber authorized to sell the Conoco fuel products required, nor did it have any trucks that could haul fuel.

On November 5, 1999, before judgment confirming the arbitration award was entered in state court, Nerland Oil filed a Chapter 7 bankruptcy petition. As a result, Nerland Oil's bankruptcy estate was subject to an automatic stay which barred issuance or enforcement of any state court judgment affecting the estate. See 11 U.S.C. § 362(a)(1), (2). Therefore, on November 18, 1999, Nerland Oil and WFTS resisted confirmation of the arbitration decision in state court and WFTS moved to vacate the arbitration award. Although the state trial court originally adopted the arbitration award, the state supreme court reversed the trial court's decision, holding that, due to the automatic stay triggered by the bankruptcy filing, the arbitration award was not final or enforceable. Superpumper, Inc. v. Nerland Oil, Inc., 620 N.W. 2d 159 (N.D. 2000).

Superpumper then initiated this adversary proceeding on April 19, 2000, seeking summary judgment to adopt the arbitration award in the United States Bankruptcy Court for the District of North Dakota. See 28 U.S.C. §§ 157, 1334; 11 U.S.C. § 553 (enabling creditor of bankruptcy estate to offset a mutual debt arising before commencement of bankruptcy filing). Nerland Oil counterclaimed, seeking reversal of the arbitration award and monetary damages resulting from Superpumper's breach of the long-term supply and freight agreements with WFTS.

Additionally, the United States, through the IRS, cross-moved for summary judgment against Nerland Oil, arguing that it possessed a superior interest in the promissory note payments on the basis of several prior federal tax liens against Nerland Oil. The federal tax liens originated in the early 1990s, when the IRS assessed unpaid federal excise and employment taxes against Nerland Oil for the following dates: August 9, 1993, August 30, 1993, September 20, 1993, December 27, 1993, January 3, 1994, December 9, 1996, December 31, 1996, November 3, 1997, December 22, 1997, and September 20, 1999. Nerland Oil did not pay these tax assessments, and the IRS filed proper notice of its federal tax liens against Nerland Oil on September 21 and 22, 1998. At the time Nerland Oil filed its

bankruptcy petition, it owed the IRS $1,693,979.57 for federal tax liens covering the 1993 and 1994 time period, which occurred prior to the sale of the Dakota Fuel Stop to Superpumper. The IRS argued that it should not be bound by the arbitration award since it was not a party to the arbitration.

On September 19, 2000, the bankruptcy court conducted a hearing to consider the cross-motions for summary judgment. At the hearing, the parties agreed to rely on the record established during the arbitration proceeding, supplemented by evidence regarding the federal tax liens. The bankruptcy court addressed for the first time the impact of the federal tax liens on Superpumper's right of setoff. On October 20, 2000, the bankruptcy court denied Superpumper's motion for summary judgment and granted summary judgment in favor of the IRS, concluding that (1) the federal tax liens became choate when the federal taxes were assessed against Nerland Oil in 1993 and 1994, thus giving the IRS priority over Superpumper in collecting its debt from Nerland Oil, and (2) because Superpumper did not qualify as a holder of an implied security interest, the IRS's lien collection right was not invalid under 26 U.S.C. § 6323(a). See Superpumper, Inc. v. Nerland Oil, Inc., No. 99-31826 (Bankr. D.N.D. Oct. 20, 2000).

Superpumper appealed the bankruptcy court decision to the district court. The district court affirmed, agreeing with the bankruptcy court that the federal tax liens took priority over Superpumper's setoff. The district court also clarified that, because a setoff does not introduce any new money into the estate, it is treated as a lien, not a payment, for purposes of determining priority, and therefore must be treated as a lien inferior to the federal tax liens. Further, the district court concluded that because Superpumper was unable to identify or trace the credit card receivables, as a result of Nerland Oil's commingling the receivables with its general funds, Superpumper must be classified as a general creditor of the Nerland Oil bankruptcy estate and therefore assume an inferior position for debt repayment. Last, the district court refused to categorize Superpumper as a "purchaser" under 26 U.S.C. § 6323

-6-

because the asset in question was not the convenience store itself, but Nerland Oil's right to receive payments under the promissory note. See In re Nerland Oil, Inc., No. A3-01-05 (D.N.D. June 13, 2001). This appeal followed.

On August 31, 2001, pursuant to Fed. R. Civ. P. 27(a) and 8th Cir. R. App. P. 27A, Nerland Oil's bankruptcy trustee moved to dismiss this appeal on the ground that the bankruptcy judgment was not a final appealable order. On September 19, 2001, pursuant to Fed. R. Civ. P. 54(b), the bankruptcy court certified that its October 20, 2000 judgment was final. See Superpumper, Inc. v. Nerland Oil, Inc., No. 99-31826 (Bankr. D.N.D. Sept. 19, 2001). The district court affirmed. On November 9, 2001, this court denied Nerland Oil's bankruptcy trustee's motion to dismiss the appeal for lack of a final appealable order. See Superpumper, Inc. v. Nerland Oil, Inc., No. 01-2962 (8th Cir. Nov. 9, 2001) (denial of motion to dismiss).

On October 17, 2001, the bankruptcy court lifted the bankruptcy stay. As a result, Nerland Oil moved to vacate and modify the arbitration award in state court, and Superpumper renewed its motion to confirm the arbitration award in state court. The state trial court denied the motion to vacate the arbitration award on June 6, 2002, and affirmed the arbitration award on June 18, 2002. Superpumper accordingly supplemented the record in this appeal to reflect the state court's favorable order. See Superpumper, Inc. v. Nerland Oil, Inc., No. 01-2962 (8th Cir. July 10, 2002) (order).

**Discussion**

We review a grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party, to determine whether there is no genuine issue of material fact so that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Minnesota Dep't of Revenue v. United States, 184 F.3d 725, 727 (8th Cir. 1999) (Minnesota Dep't of Revenue) (reviewing *de novo* a grant of summary judgment regarding priority of federal tax lien).

-7-

*I. Priority of Federal Tax Liens*

"Priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" Minnesota Dep't of Revenue, 184 F.3d at 728 (quoting United States v. McDermott, 507 U.S. 447, 449 (1993)). According to federal law, "'the priority of a lien depends on the time the lien attached to the property in question and became choate.'" Id. at 728 (quoting Cannon Valley Woodwork, Inc. v. Malton Construction Co., 866 F. Supp. 1248, 1250 (D. Minn. 1994)). A federal tax lien attaches and becomes choate at assessment. See 26 U.S.C. §§ 6321 (consequence of unpaid taxes after assessment is "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person"), 6322 (lien arises at the time assessment of unpaid taxes is made against delinquent taxpayer). Therefore, a federal tax lien's priority order is based upon the time when the lien is *assessed*, not when it is filed. See United States v. Jepsen, 268 F.3d 582, 584 (8th Cir. 2001) (tax assessment creates a lien in favor of the United States on all property and rights to property pursuant to 26 U.S.C. §§ 6321, 6322); Minnesota Dep't of Revenue, 184 F.3d at 728 ("The lien arises automatically when the assessment is made and continues until the taxpayer's liability is either satisfied or becomes unenforceable due to the lapse of time."); Horton Dairy Inc. v. United States, 986 F.2d 286, 291 (8th Cir. 1993) (Horton Dairy) ("Federal law determines choateness, and the federal rule is that liens are perfected in the sense that there is nothing more to be done to have a choate lien – when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.") (quoting United States v. New Britain, 347 U.S. 81, 84 (1954) (internal quotations omitted)).

In this case, federal tax liens totaling $1,693,979.57 against Nerland Oil were assessed and became choate over the course of 1993 and 1994. A competing state interest cannot take priority over those assessments unless (1) the state interest became choate before the federal tax assessment, see Minnesota Dep't of Revenue,

184 F.3d at 728, or (2) the state interest falls within the statutorily-defined exceptions to the IRS's lien priority order.  See 26 U.S.C. § 6323.

## II.  Inferiority of the Attempted Setoff Transaction

We apply federal law to determine the priority order of liens competing with federal tax liens.  See Minnesota Dep't of Revenue, 184 F.3d at 728 (citing Aquilano v. United States, 363 U.S. 509, 513-14 (1960)).  However, we apply state law to determine the nature of the competing legal interest at stake.  See Bremen Bank & Trust Co. v. United States, 131 F.3d 1259, 1263 (8th Cir. 1997).

Superpumper asserted its claim under 11 U.S.C. § 553(a), which preserves rights of creditors to offset mutual debts arising before a bankruptcy petition is filed.  See United States v. Gerth, 991 F.2d 1428, 1431 (8th Cir. 1993).  However, § 553(a) only preserves setoff rights that are otherwise valid under applicable nonbankruptcy law.  See In re Sauer, 223 B.R. 715, 724 (Bankr. D.N.D. 1998).  When Superpumper demanded a setoff of the mutual debts from Nerland Oil in October 1996, its state-law interest in the attempted setoff transaction became choate.  See Horton Dairy, 986 F.2d at 291 (state-created right of setoff becomes choate when it is exercised).

However, by October 1996, $1,693,979.57 in unpaid federal taxes already had been assessed against Nerland Oil (some as early as 1993).  As a result, any subsequent transaction, including Superpumper's attempted setoff transaction, must take an inferior position to the federal tax liens.  See id. (treating the holder of an inchoate state-created setoff right as a lienholder inferior to a choate federal tax lien).  As an inferior lienholder, Superpumper may not effect a setoff transaction to compensate it for the loss of the credit card receivables until after the superior federal tax liens are satisfied.  See 26 U.S.C. § 6322 (federal tax lien remains in effect until liability "is satisfied or becomes unenforceable").  As a practical matter in the present

case, satisfaction of the federal tax liens will deplete entirely the Nerland Oil bankruptcy estate.  See In re: Nerland Oil, Inc., No. 99-31826 (Bankr. D.N.D. 2000).

Moreover, the scope of the federal tax liens includes all the delinquent taxpayer's property interests, including interests acquired after the liens were assessed.  See 26 U.S.C. §§ 6321; Shawnee State Bank v. United States, 735 F.2d 308, 310 (8th Cir. 1984) ("[t]he lien attaches to all the property of the defaulting taxpayer, including property acquired by the taxpayer after the lien arises") (citing Glass City Bank v. United States, 326 U.S. 265, 267-69 (1945)).  Consequently, the federal tax liens attached to all of Nerland Oil's property interests, including the promissory note acquired in exchange for the sale of the Dakota Fuel Stop, which was signed after the federal tax liens were assessed.

Superpumper attempts to distinguish this case from a typical lien priority case, arguing that (1) as Nerland Oil's debtor, not its creditor, Superpumper's debt was not part of the property subject to the federal tax liens; (2) because the funds used to complete the setoff transaction – the credit card receivables – were actually Superpumper's own funds held in trust by Nerland Oil, not the property of Nerland Oil, those funds were not part of the property subject to the federal tax liens; and (3) because the bankruptcy filing occurred after Superpumper's completion of the setoff transaction,[4] only the remaining amount on the promissory note and mortgage should be considered part of the bankruptcy estate.[5]

---

[4]Superpumper defines the date of completion of the setoff transaction as August 18, 1999, the date on which the arbitration panel applied state law to conclude that the setoff should be mandated.  The bankruptcy petition was filed on November 5, 1999.

[5]If the setoff transaction was valid, $10,994 remained on the promissory note and mortgage.

We find these arguments unpersuasive. Nothing distinguishes this case from typical lien priority cases. First, Superpumper's debt in the form of the promissory note constitutes the type of property typically subject to a federal tax lien. See St. Louis Union Trust Co. v. United States, 617 F.2d 1293, 1301 n.11 (8th Cir. 1980) (considering escrow agreement providing income payable to debtor-taxpayer to be property available to satisfy federal tax lien). We apply federal law to determine whether or not the interest at stake constitutes property for purposes of federal tax lien satisfaction. See Drye v. United States, 528 U.S. 49, 50 (1999) ("whether a state-law right constitutes 'property' or 'rights to property' under § 6321 is a matter of federal law") (quoting United States v. National Bank of Commerce, 472 U.S. 713, 727 (1985) (internal quotations omitted)). "Property" broadly includes "every species of right or interest protected by law and having an exchangeable value." Id. The promissory note clearly has value – the right to collect payments on it – as well as transferability. See Black's Law Dictionary 1085 (7th ed. 1999) (defining "promissory note" as a "negotiable instrument"); see also UCC § 3-104 (categorizing a promissory note as a negotiable instrument).

Second, Superpumper incorrectly classifies the property at stake as the funds used to complete the setoff transaction. Superpumper confuses the issue by conflating two separate debts: (1) Superpumper's debt to Nerland Oil under the promissory note, and (2) Nerland Oil's debt to Superpumper resulting from its failure to remit the credit card receivables. Superpumper seeks to treat the two debts interchangeably, as the attempted setoff transaction would have done. However, we recognize that the two debts are separate and distinct from one another, and thus involve different rights and consequences.

We agree with the district court that the relevant property interest is Superpumper's debt to Nerland Oil involving the right to collect payments under the promissory note. See In re Nerland Oil, Inc., No. A3-01-05 (D.N.D. June 13, 2001). The federal tax liens transferred to the IRS the right to all of Nerland Oil's property,

-11-

including Nerland Oil's later-acquired right to collect Superpumper's debt under the promissory note. Therefore, Superpumper's debt under the promissory note was owed to the IRS, not Nerland Oil. It does not matter what type of funds the credit card receivables are, because by the time Superpumper attempted the setoff transaction, there was no debt owed to Nerland Oil to setoff the debt Nerland Oil owed to Superpumper.[6]

Third, the date of the attempted setoff transaction in relation to the bankruptcy filing is irrelevant because, as already discussed, the assessment of the federal tax liens occurred as early as 1993 and 1994 and thus predated the attempted setoff transaction in October 1996 and thus nullified it.

---

[6]Although Superpumper does not claim explicitly an action for constructive trust based on wrongful conversion of the credit card receivables, it appears that Superpumper intends to pursue that theory by claiming that the credit card receivables were Superpumper's own funds held in trust by Nerland Oil and therefore should be exempted from the bankruptcy estate property accessible to satisfy the IRS tax liens. However, North Dakota law imposes a substantial evidentiary burden on the party seeking to establish a constructive trust, see Napolean Livestock Auction, Inc. v. Rohrich, 406 N.W.2d 346, 356 (N.D. 1987), and it is impossible for us to review whether that burden has been satisfied because (1) the issue was not raised before the original factfinder of the bankruptcy court, see First Bank Investors' Trust v. Tarkio Coll., 129 F.3d 471, 476-77 (8th Cir. 1997) (requiring factual issues to be considered on appeal to be presented to bankruptcy court first), and (2) Superpumper agreed to stipulate to the facts already in the record following the arbitration panel proceeding, which are insufficient to substantiate a constructive trust claim. See Napolean Livestock Auction, Inc. v. Rohrich, 406 N.W.2d at 356-57 (imposition of constructive trust not allowed in absence of both parties' recognition of issue and acquiescence in the introduction of evidence on that issue).

*III. Applicability of 26 U.S.C. § 6323*

Superpumper's only recourse lies in 26 U.S.C. § 6323, which protects specific types of creditors in a bankruptcy proceeding from the priority rule favoring the IRS. See 26 U.S.C. § 6323(a)[7]; Millers Mutual Ins. Assoc. of Illinois v. Wassall, 738 F.2d 302, 304 n.5 (8th Cir. 1984) ("'[26 U.S.C.] [s]ection 6323 of the Federal Tax Lien Act of 1966 is the exclusive source of exceptions to the priority of federal tax liens'") (quoting Campagna-Turano Bakery, Inc. v. United States, 632 F.2d 39, 41 (7th Cir. 1980)). Section 6323(a) invalidates properly filed federal tax liens against purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors. See Hoggarth v. Somsen, 496 N.W.2d 35, 39 (N.D. 1993) (federal priority statutes give IRS priority unless competing state interests are accorded "purchaser" status prior to IRS filing). A "purchaser" is defined as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6).

Superpumper contends that it should be considered a purchaser within the meaning of § 6323(a) because (1) it made continuing installment payments of the purchase price of the Dakota Fuel Stop through the promissory note, and (2) the setoff transaction acted as a payment on the purchase-money mortgage.

---

[7]In 1966, Congress enacted the Federal Tax Lien Act, codified at 26 U.S.C. § 6323, which carved out specific exemptions from the otherwise broad scope of federal tax liens imposed by the IRS. "Before 1966, the requirement of choateness . . . generally operated to prevent a nonfederal lien from gaining priority over a federal tax lien with respect to property acquired by the debtor after the tax lien had arisen." Shawnee State Bank v. United States, 735 F.2d at 310. The purpose of the Act was "to specifically enumerate certain 'superpriorities' . . . and commercial financing transactions . . . that defeat a federal tax lien." Dugan v. United States, 472 F.2d 944, 950 n.9 (8th Cir. 1973).

Even if the installment payments made pursuant to the promissory note could transform Superpumper into a purchaser, at most Superpumper was a purchaser of the Dakota Fuel Stop, not a purchaser of the right to receive payments under the promissory note. Therefore, Superpumper would only be protected by § 6323(a) against any taxes levied against the Dakota Fuel Stop, which is not an issue in this case.

Superpumper next advances the theory that it purchased the right to receive payments under the promissory note by virtue of the attempted setoff transaction. Superpumper attempted the setoff transaction in October 1996, prior to the filing of the federal tax liens in September 1998. If Superpumper was a purchaser under § 6323 at that time, then it would be protected against the unfiled federal tax liens. However, "[p]arties claiming the protected status of [§] 6323(a) have the burden of proving that they qualify for that protection." Hoggarth v. Somsen, 496 N.W.2d at 39. To satisfy that burden, Superpumper must prove that (1) it gave "adequate and full consideration in money or money's worth," (2) it acquired an interest in property "other than a lien or security interest," and (3) the interest is "valid under local law against subsequent purchasers." 26 U.S.C. § 6323(a).

We do not agree that the attempted setoff transaction converted Superpumper into a purchaser within the meaning of § 6323. Because the two interests involved in the attempted setoff transaction were mutual debts, there was no exchange of "adequate and full consideration in money or money's worth." Id. Rather, Superpumper sought to obtain the right not to pay the balance on the promissory note. We agree with the district court's reasoning that because the attempted setoff transaction did not propose to pay any new money into the bankruptcy estate, it cannot be considered a payment in exchange for the right to receive payments under the promissory note.

-14-

To be considered a payment, either money or something of value must be "given and accepted in partial or full discharge of an obligation." Black's Law Dictionary 1150. The record does not contain any evidence to indicate that, at the time Nerland Oil began failing to remit the credit card receivables, Superpumper gave Nerland Oil permission to cease remitting the credit card receivables in exchange for release of its obligation to pay the amounts owed under the promissory note. Nor is there any evidence demonstrating that Nerland Oil accepted this arrangement. On the contrary, the record reflects that Superpumper sought the setoff as an after-the-fact remedy and that Nerland Oil rejected the proposed setoff.[8] See Black's Law Dictionary 1376 (defining "setoff" as the "right to reduce the amount of debt by any sum the debtor owes the creditor").

"The exceptions permitted under § 6323 are carefully crafted and narrowly limited," Janssen v. United States, 213 B.R. 558, 564 (B.A.P. 8th Cir. 1997) (quoting Battley v. United States (In re Berg), 121 F.3d 535, 537 (9th Cir. 1997)), and we cannot justify expanding the definition of purchaser as Superpumper urges. Rather, we think Superpumper is characterized more accurately as a judgment lien creditor, whose interest in the attempted setoff transaction was perfected and became choate on June 18, 2002, the date the state court entered final judgment enforcing the attempted setoff transaction. Because that date occurred after the IRS properly filed its tax liens in September 1998, Superpumper is not entitled to superpriority under the protection of § 6323(a). See Horton Dairy, 986 F.2d at 291 (treating a setoff as a

_____

[8]We note that Superpumper's "setoff as payment" theory was not presented to the bankruptcy court and the record contains no evidence to substantiate that theory. We address the issue only insofar as we may draw legal conclusions from the established record. We consider any argument requiring additional factual findings to have been waived. See First Bank Investors' Trust v. Tarkio Coll., 129 F.3d 471, 476-77 (8th Cir. 1997) (enabling appellate court to consider arguments not raised in bankruptcy court only "'when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case'") (quoting Universal Title Ins. Co. v. United States, 942 F.2d 1311, 1314-15 (8th Cir. 1991)).

competing lien when determining priority); <u>United States v. Scovil</u>, 348 U.S. 218, 221 (1955) (considering transaction involving cancellation of debt not to be a purchase for purposes of taking priority over a federal tax lien).

As a result, we hold that the district court did not err in affirming the bankruptcy court's decision to give priority to the federal tax liens when distributing the property in Nerland Oil's bankruptcy estate.

## Conclusion

Accordingly, the order of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.