BAYBANK MIDDLESEX, Plaintiff,

v.

ELECTRONIC FABRICATORS, INC.; Pierce Aluminum; Reservoir Management Corp.; Commonwealth of Massachusetts, Division of Employment Security; United States of America, Department of the Treasury—Internal Revenue Service; and Zecco, Inc; Defendants.

Civ. A. No. 86–3401–Y.

United States District Court, D. Massachusetts.

Nov. 26, 1990.

Barry G. Braunstein, Riemer & Braunstein, Boston, Mass., for plaintiff.

Susan Poswistilo, Boston, Mass., Henry Riordan, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendants.

Eileen Ryan, Legal Bureau, Dept. of Revenue, Edward Santella, Asst. Chief Counsel, Boston, Mass., for Com.

Thomas Raferty, Phyllis Menken, Sherin & Lodgen, Boston, Mass., for Pierce.

## MEMORANDUM OF DECISION

YOUNG, District Judge.

### I. INTRODUCTION

In this case, the Court must first determine whether the Commonwealth of Massachusetts, Department of Employment and Training (the Department) [1] has a lien under Massachusetts law against Electronic Fabricators, Inc. (Electronic) for unpaid unemployment contributions for the first quarter of 1984 dating from the filing of the notice of lien when, at the time of filing, the Department had not complied with the provisions of Mass.Gen.Laws ch. 151A, § 15. The Court holds that the Department does have a lien from that date, so it must consider whether the Department's lien has priority over the federal tax liens which were assessed after the Department filed its notice of lien. With respect to this second issue, the Court holds that the Department's lien has priority over those of the United States because at the time it was filed, the Department's lien was choate within the meaning of *United States v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954).

### II. BACKGROUND

Acting pursuant to the judgment of the Massachusetts Land Court, the plaintiff Baybank Middlesex foreclosed on a mortgage granted to the defendant Electronic and on June 11, 1986, sold the mortgaged premises at a public auction to the highest bidder. After satisfying Electronic's total indebtedness to Baybank Middlesex, there remained a surplus of $69,373.56. Because Baybank Middlesex did not claim any interest in the surplus, it then initiated an interpleader action in the Middlesex Superior Court pursuant to Mass.R.Civ.P. 22, Mass. Gen.Laws ch. 183, § 27, and Mass.Gen. Laws ch. 214, § 3(3), asking that it be al-

lowed to pay the surplus into the court and thereby be discharged from all further liability.

Before the state court could act on Baybank Middlesex's complaint in interpleader, the United States, on November 21, 1986, filed a verified petition of removal with this Court pursuant to 28 U.S.C. §§ 1441 and 1444, claiming an interest in the surplus by virtue of several federal tax liens. That petition was granted and, after some desultory skirmishing among the parties, this Court, on February 1, 1990, granted the motion of Baybank Middlesex for leave of the Court to deposit the surplus and be dismissed from this action. This interpleader action was set for trial on July 18, 1990. At that time, the Court and the two parties in interest, the United States and the Department,[2] recognized that there were no genuine issues of material fact and that the parties could therefore stipulate to the facts in this case. As a result, the Court ordered the United States and the Department to prepare a joint written stipulation of facts. Based on this stipulation, the Court enters the following findings of fact and conclusions of law.

### III. ANALYSIS

A. Findings of Fact

1. The interpled funds are the surplus proceeds from a foreclosure action previously brought by Baybank Middlesex against real property owned by Electronic in Middlesex County, Massachusetts. Joint Trial Stipulation, July 24, 1990, ¶ 15 [hereinafter Stip.].

2. The Commonwealth of Massachusetts, Department of Employment and Training (the Department) is charged with the collection of employer's contributions to the Commonwealth's unemployment compensation fund. Stip. at ¶ 16.

---

**1.** The Division of Employment Security is now the Department of Employment and Training, and the Director of the Division of Employment Security is now the Commissioner of the Department of Employment and Training. *See* 1988 Mass. Statutes ch. 236.

**2.** When this case was called for trial, the only other interpleader defendant to appear was Pierce Aluminum, which informed the Court that it did not have any interest in the interpled funds in view of the liens of the United States and the Commonwealth. Pierce Aluminum conceded that the liens of the United States and the Commonwealth were superior to its claim.

3. At all times relevant to this proceeding Electronic was an employer subject to Mass.Gen.Laws ch. 151A.

4. On or about April 30, 1984, Electronic filed a timely Employer's Quarterly Contribution Report (the Report) for the quarter ending March 31, 1984, which, under the Department's accounting system, constitutes the first quarter of the year. Stip. at ¶ 18. The Report reflects a tax incurred for that period of $5,030.68 for contribution and $271.93 for an unemployment insurance surcharge, for a total amount owed of $5,302.61. *Id.* The records of the Department reflect debits for the amounts shown on the face of the Report, and an absence of any entry for credits for the time when the Report was filed. *Id.*

5. On December 7, 1984, the Department recorded a Notice of Lien in the Middlesex County Registry of Deeds, Northern District. Stip. at ¶ 19. The amount of the lien claimed by the Department for unemployment contributions, interest, surcharge, and surcharge interest against Electronic for the first quarter of 1984 [3] is based upon the report of Electronic, the debits and credits reflected in the records of the Department, and the Department's computation of interest. Stip. at ¶ 24.

6. The United States has a lien on all property and rights to property of Electronic for withholding income and both employer's and employee's Federal Insurance Contributions Act (FICA) taxes as follows:

| Tax Period Ending | Balance Due [4] | Date of Assessment |
| --- | --- | --- |
| 12/31/83 | $17,989.00 | 03/12/84 and 11/11/85 |
| 06/30/84 | $24,256.28 | 09/17/84 |
| 12/31/84 | $53,077.31 | 03/15/85 |
| 06/30/85 | $41,655.49 | 12/03/85 |

Stip. at ¶ 5.

---

B. Conclusions of Law

1. The Department Has A Lien Under State Law.

■ The Department's lien arises pursuant to Mass.Gen.Laws ch. 151A, § 16, which provides, in pertinent part, that:

overdue contributions ... shall until collected, be a lien against the assets of the employer, subordinate, however, to claims for unpaid wages and prior recorded liens; provided, that no lien created by this section shall be valid ... against a subsequent attaching creditor

of land of such employer, unless and until there shall have been recorded in the registry of deeds for the county or district wherein the land lies a notice by the director of such lien, which notice shall state the name of the employer, the address of his principal place of business within the commonwealth, and the total amount then unpaid of the aforesaid overdue contributions or payments in lieu of contributions, and interest thereon or penalties assessed in lieu thereof or of said judgment ... Such lien may be enforced or dissolved in the manner pro-

---

3. After representing to the Court that the parties could fully stipulate to all material facts in this case, the United States now attempts to raise a factual dispute by denying that the Department's Notice of Lien was filed for the first quarter of 1984 and claiming instead that the Notice of Lien refers to the second quarter. Defendant United States' Supplemental Trial Memorandum at 14. Although mindful that the actual number typed onto the Notice of Lien indicating the quarter for which the tax was overdue could be either a "1" or a "2," the Court rebuffs this attempt on two grounds. First, this fact is not material because it makes absolutely no difference to the outcome of this case whether the number actually appearing on the Notice of Lien is a "1" or a "2." Second, by agreeing that this case could be tried on the basis of a joint stipulation of the facts by the parties, the United States waived any right it may have had to raise this issue.

4. Balance due as of April 23, 1990. Interest and penalties continue to accrue as matter of law.

vided in chapter two hundred and fifty-four for enforcing or dissolving liens on buildings and land.

According to this statute, under the stipulated facts of this case the Department's lien arose on April 30, 1984, when Electronic filed a timely Employer's Quarterly Contribution Report showing $5,302.61 in overdue contributions owed by Electronic to the Department. Moreover, since Electronic still owes this amount (plus interest) to the Department, the Department's lien for overdue contributions remains in existence.

The Department's lien is "valid against ... a subsequent attaching creditor of land of such employer," id., such as the United States, because its Notice of Lien filed on December 7, 1984, meets the requirements of section sixteen. First, as required by section sixteen, the Notice of Lien was filed by the Director of the Division of Employment Security in the Middlesex County Registry of Deeds, Northern Division, the registry of deeds for the county and dis-

trict in which the land lies. Second, the Notice states the name of the employer, the employer's principal place of business, and the total amount of tax due. Therefore, under Massachusetts law, the Department has a lien against the assets of Electronic dating from December 7, 1984.

The Court is not persuaded by the argument of the United States that the Department does not have a lien under Massachusetts law because "[a] lien is not created under Massachusetts General Laws Chapter 151A, § 16 for 'overdue contributions' until one of the deficiency procedures under Massachusetts General Laws Chapter 151A, § 15 are [sic] followed." Defendant United States' Supplemental Trial Memorandum at 8. According to the United States, the Court's holding that section sixteen by itself provides the Department with a lien against Electronic is an untenable construction because it reads section 15 of chapter 151A out of the law.[5]

---

5. Massachusetts General Laws Chapter 151A, sec. 15(e), which is the portion of section 15 devoted to unpaid contributions, states:

> (e) In lieu of the procedures provided by subsections (b), (c) an (d) for collecting unpaid and overdue contributions, payments in lieu of contributions, interest or penalties the director may assess such contributions, payments in lieu of contributions, interest or penalties against the employer, certify the amount of such unpaid and overdue contributions, payments in lieu of contributions, interest or penalties, and give the employer written notice of the certified assessment by serving a copy thereof either personally or by registered mail directed to the employer's last known address in the commonwealth or, if he has none in the commonwealth, in any state.
>
> (1) The assessment shall be based upon the reports required to be filed by the employer under the provisions of this chapter, except that the director may determine the amount of unpaid and overdue contributions, payments in lieu of contributions, interest or penalties due from such employer on the basis of such information as he may be able to obtain when the employer has failed to file any such report or, if he has filed such report, it is incorrect or insufficient, or if the employer is not required to file such report from such information available to the director.
>
> (2) The notice shall be served or mailed to the employer at any time within the period provided for the commencement of a civil action by subsection (b).

> (3) The assessment shall be final unless the employer files a petition for reassessment with the director within ten days following the date of personal service or mailing of the notice. A petition for reassessment shall set forth specifically and in detail the reasons why the employer claims the assessment is erroneous.
>
> (4) The employer shall be given a reasonable opportunity for a fair hearing on his petition for reassessment before the director or his representative, unless such petition is either withdrawn by the employer or is allowed by the director. After such hearing, the director or his representative shall promptly notify the employer of the decision upon the petition together with the reasons therefor. This decision shall be final unless the employer files an application for further review with the board of review within ten days following the date of mailing of the decision to the employer. An application by the employer for further review by the board shall set forth specifically and in detail the reasons why the employer claims the decision is erroneous.
>
> (5) The board may allow or deny an application for further review. If the application is denied, the decision of the director or his representative shall be deemed to be the decision of the board. If the application is allowed, the board may, on the basis of the evidence previously submitted in such case and any additional evidence which it may take or direct the director to take, affirm, modify, reverse or set aside the decision of the director or his representative. The board

First, as a matter of statutory construction, the Court's holding does not read section fifteen out of the law. On the contrary, under the Court's interpretation, sections fifteen and sixteen provide alternative means by which the Department can create and enforce liens against employers for overdue contributions, and give those liens differing priorities based upon the means chosen to create them. *See* Garber, *Note on Enforceability of Employment Security Liens on Real Estate,* 17 Boston Bar J. No. 4, 11, 12–13 (1973) (assuming that sections fifteen and sixteen both create liens for overdue contributions) [hereinafter Garber]. In order to create a section 15(e) lien for overdue contributions, the Department must follow the steps prescribed in that section, to include making an assessment of overdue contributions, giving notice to the employer and obtaining a lien. Mass. Gen.Laws ch. 151A, § 15(e)(6). "The priority of said lien[ ] shall be governed by the provisions of section seventeen." Mass. Gen.Laws Ann. ch. 151A, § 15(e)(6) (West Supp.1984). According to section seventeen, "[c]ontributions, payments in lieu of

contributions and interest or penalties thereon shall have priority over all other claims against an employer, except wage claims." Mass.Gen.Laws Ann. ch. 151A, § 17 (West Supp.1984). Compared to a section 15(e) lien, a section sixteen lien is different in that it (1) arises as soon as the employer's contribution becomes overdue but (2) is subordinate both to "claims for unpaid wages and prior recorded liens." Mass.Gen.Laws Ann. ch. 151A, § 16 (West 1982). In sum, the section sixteen lien arises sooner than does the section 15(e) lien, but the section 15(e) lien is the only one of the two which takes precedence over prior recorded liens.

Second, the language in section sixteen which unequivocally creates the lien for overdue contributions makes no mention of section fifteen. This omission seems especially instructive in light of section sixteen's express reference to section fifteen when speaking of judgments:

Judgments recovered under any provision of *section fifteen* and overdue contributions or payments in lieu of contributions, with interest thereon or penal-

shall promptly notify the employer of its decision and the reasons therefor. The decision shall be final unless the employer obtains judicial review of such decision by filing, within twenty days of the date of personal service or mailing of such decision, a petition of review thereof in accordance with the applicable provisions of section twelve.

(6) If an assessment, or any administrative decision upon review thereof, has become final and the contributions, payments in lieu of contributions, interest or penalties thereby assessed remain unpaid, the director may file with the clerk of the municipal court department of the city of Boston or in the district court department in the judicial district where the employer has his principal place of business or any other judicial district in which the employer has real or personal property, or with all of them, a certificate or a copy thereof under his official seal, stating: the name and address of the employer, the amount of the contributions, payments in lieu of contributions, interest or penalties assessed and in default, and that the time in which the administrative review is permitted, pursuant to this section, has expired without an appeal having been taken, and thereupon such clerk shall enter into the judgment records of the court the name of the employer mentioned in the certificate, the amount of such contributions, payments in lieu of contributions, interest or penalties assessed and in default, and the date

such certificate is filed. After such certificate is duly filed and recorded with such court, the amount of the assessment shall be a lien upon the entire interest of the employer, legal or equitable, in any property, real or personal, tangible or intangible, situated within the jurisdiction of such court; provided, however, that, with respect to real estate of the employer, a copy of said certificate is recorded in the records of the county, or of the district, if such county is divided into districts, where such real estate is located; and provided, further, with respect to personal property of the employer such certificate is recorded with the clerk of the city or town where such personal property is situated. The priority of said liens shall be governed by the provisions of section seventeen. Said liens may be enforced against any real or personal property and execution shall be issuable at the request of the director, his agent or attorney, in the same manner as a duly entered judgment of the court. No recording fee shall be paid by the director for the filing of a certificate, no exemption shall be allowed from the levy of an execution and no indemnifying bond shall be required by the sheriff or other officer before making a levy.
Mass.Gen.Laws Ann. ch. 151A, § 15(e) (West Supp.1984).

ties assessed in lieu thereof, shall until collected be a lien against the assets of the employer....

Mass.Gen.Laws Ann. ch. 151A, § 16 (West 1982) (emphasis added). This statutory language suggests that the Massachusetts legislature intended that section fifteen provide the procedure for obtaining the judgments mentioned in section sixteen, not that it provide the sole procedure for subjecting overdue contributions to the Department's lien.

Nor does the Court accept the alternative argument of the United States that even if section sixteen created a lien in favor of the Department, that lien dissolved after sixty days due to the failure of the Department to commence an action in equity to enforce its lien. The United States bases this argument on the last sentence of section sixteen, which states:

> [s]uch lien may be enforced or dissolved in the manner provided in chapter two hundred and fifty-four for enforcing or dissolving liens on buildings and land.

Mass.Gen.Laws Ann. ch. 151A, § 16 (West 1982). Turning to Massachusetts General Laws Chapter 254, the United States points to the following language in section eleven thereof:

> The lien shall be dissolved unless a civil action to enforce it is commenced within sixty days after the filing of the statement required by section eight.

Mass.Gen.Laws Ann. ch. 254, § 11 (West 1982). Reading these two sections together, the United States argues that even if the Department had a lien when it filed its Notice of Lien on December 7, 1984, that lien dissolved because the Department did not commence a civil action to enforce it within sixty days.

■ Although interesting, this argument fails to take account of both the statutory language and the legislative intent. With respect to the statutory language, section sixteen uses "shall" to mandate that the Department's liens remain in effect until collected, while using "may" to permit the Department to enforce or dissolve its liens:

> overdue contributions ... *shall* until collected be a lien against the assets of the

employer.... Such lien *may* be enforced or dissolved in the manner provided in chapter two hundred and fifty-four for enforcing or dissolving liens on buildings and land.

Mass.Gen.Laws Ann. ch. 151A, § 16 (West 1982) (emphasis added). Similarly permissive language appears in section sixteen, under which the Department's liens "may be enforced or dissolved in the manner provided in chapter two hundred and fifty-four." *Id.* This phrasing suggests that it is permissible for the Department to choose among the various methods of dissolution contained in Massachusetts General Laws Chapter 254, not that the Department's liens dissolve if it does not file a civil action within sixty days. Given the clarity of this statutory command, the Court concludes that the Department's lien remains in effect until collected. *See* Park, 28A *Massachusetts Practice: Real Estate Law*, § 1147 (7th ed. 1981) (observing that "[n]o date is given for expiration of this lien"). *But see* Garber, at 13–14 (1973) (concluding that if the Department has not commenced a civil action to enforce its liens within sixty days of filing, the liens dissolve by operation of Massachusetts General Laws Chapter 254, section 11).

Even if the statutory language was not so clear, the Court remains unconvinced that the Massachusetts legislature intended that the Department's liens dissolve by operation of law when it fails to commence a civil action within sixty days of the filing of its notice of lien. Although a judicial interpretation that section sixteen liens (absent commencement of a legal action) dissolve after sixty days simplifies title searches, it does so at the cost of depriving the Commonwealth of Massachusetts of funds to which it otherwise has a valid right. The Court is reluctant to hold, on the information available to it, that the Massachusetts legislature intended to apply such a draconian rule to one of its own state agencies, especially in light of its refusal to allow interest or costs to be taxed against the Commonwealth in those situations where the Department has assessed an erroneous

claim against an employer. *See* Mass.Gen. Laws ch. 151A, § 15(d).

Accordingly, despite the arguments of the United States to the contrary, this Court holds that the filing of the notice was sufficient under Mass.Gen.Laws ch. 151A, § 16 to create a lien that was valid upon the date of filing and thereafter until collected.

2. The Department's Lien Was Choate At The Time It Was Filed.

■ Federal tax liens are creatures of federal law. *United States v. Brosnan,* 363 U.S. 237, 240, 80 S.Ct. 1108, 1110, 4 L.Ed.2d 1192 (1960). Accordingly, where a federal tax lien and a lien created by state law create competing claims to a delinquent taxpayer's property, federal law governs the question of priority of the liens. *Aquilino v. United States,* 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960); *see* 26 U.S.C. § 6323. The priority of liens, including federal tax liens, is governed by the rule that "the first in time is the first in right." *New Britain,* 347 U.S. at 85, 74 S.Ct. at 370; *Meyer v. United States,* 375 U.S. 233, 236, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963). *See also Chicago Title Ins. Co. v. Sherred Village Assoc.,* 568 F.2d 217, 219–20 (1st Cir.1978). Under this rule, a federal tax lien takes precedence from the date of assessment. 26 U.S.C. § 6322.

■ What's more, a state-created lien must be choate under federal law in order to take precedence over a later assessed federal tax lien. *New Britain,* 347 U.S. at 84, 74 S.Ct. at 369. A lien becomes choate when there is nothing more to be done to perfect it, *i.e.,* when the identity of the lienor, the property subject to the lien, and the amount of the lien is established. *Id.* A state-created lien which meets this three-pronged test is choate and takes priority over later assessed federal tax liens from the date it first becomes choate.

■ Since it is undisputed that the Department's December 7, 1984 Notice of Lien establishes the identity of the lienor and the property subject to the lien, the only question the Court must consider is whether the Notice of Lien sufficiently established the amount of the lien. Although neither the Court nor the parties have been able to find any case law directly on point, the Court is persuaded by the cases holding that in order for the amount of the lien to be established, there must be "some activity by the State to fix the taxpayer's liability." *In re Priest,* 712 F.2d 1326, 1328 (9th Cir.1983), *modified,* 725 F.2d 477 (9th Cir. 1984); *Brown v. State of Maryland,* 699 F.Supp. 1149, 1154 (D.Md.1987), *affirmed sub nom. Moschell v. Marmon,* 862 F.2d 869 & 870. That "activity" includes "any administrative act by which the State acknowledged in its own accounts that the taxpayer is liable for unpaid taxes, or the precise amount of that deficiency, and the amount of penalty, interest and fees." *Priest,* 712 F.2d at 1329.

In filing the December 7, 1984 Notice of Lien, the Department acted to fix Electronic's tax liability. First, the Department acknowledged in its own accounts that Electronic was liable for unpaid taxes and relied on Electronic's Quarterly Contribution Report to compute the precise amount of the deficiency, which it listed on the Notice of Lien.[6] Second, the Department calculated the interest due and also included those figures on the Notice of Lien. Consequently, "there is nothing more to be done to have a choate lien." *New Britain,* 347 U.S. at 84, 74 S.Ct. at 369.

For the foregoing reasons, the Court holds that the Department's lien against Electronic for $5,799.84 became choate within the meaning of federal law on De-

---

**6.** The Court rejects the argument made by the United States that in order to fix the amount of the lien, the state itself must calculate the amount of the tax deficiency. *See* Defendant United States' Supplemental Trial Memorandum at 16. While it is possible that the amount of lien might be incorrect due to a mathematical error, vagueness is simply not a problem. In this case, for example, the Department filed a Notice of Lien for the precise amount of $5,779.84. By doing so, the Department provided Electronic with "advice from the State, as to the computation of tax liability, interest, penalties, and fees." *In re Priest,* 712 F.2d 1326, 1329 (9th Cir.1983), *modified,* 725 F.2d 477 (9th Cir. 1984).

cember 7, 1984, the date the Department filed its Notice of Lien.

## CONCLUSION

 As the lien of the Department takes priority in the circumstances of this case, the Commonwealth of Massachusetts is entitled to satisfy its lien out of the funds paid into Court. This done, the United States is entitled to the remainder of such funds since its lien, while subordinate to that of the Commonwealth, is superior to the claims of all the other creditors and exceeds the total amount of the fund.

The parties will prepare a form of judgment to effectuate this memorandum of decision.

SO ORDERED.