**CANNON VALLEY WOODWORK, INC., a Minnesota Corporation, Plaintiff,**

v.

**MALTON CONSTRUCTION CO., a Minnesota Corporation; the State of Minnesota; and the United States of America, Defendants.**

Civ. No. 4–93–434.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 31, 1994.

Sheridan John Buckley, Buckley & Jensen, St. Paul, MN, for plaintiff Cannon Valley Woodwork, Inc.

Hubert H. Humphrey III, MN Atty. Gen., Francis C. Ling, Asst. MN Atty. Gen., Tax Litigation Div., St. Paul, MN, for defendant State of Minn.

Rachel D. Cramer, Stephen P. Kranz, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant U.S.

## ORDER

DOTY, District Judge.

This matter is before the court upon the motions of defendant United States ("United States") and defendant State of Minnesota ("Minnesota") for summary judgment.

## BACKGROUND

Plaintiff Cannon Valley Woodwork, Inc. ("Cannon") commenced this interpleader action under Fed.R.Civ.P. 22 to determine the rights and interests of defendants in proceeds received from Cannon's sale of equipment owned by defendant Malton Construction Co. ("Malton"). Malton is an electrical contracting company which incurred unpaid balances for state and federal withholding taxes. Specifically, Malton owed state withholding taxes for the first quarter 1992 in the amount of $17,279.95, second quarter 1992 taxes in the amount of $17,047.63, and third quarter 1992 taxes in the amount of $26,-266.25.[1] The United States also assessed Malton for unpaid federal withholding taxes for second quarter 1992 on October 5, 1992 in the amount of $115,268.00.[2] Each taxing authority claims liens on Malton's property arising from unpaid withholding taxes.[3]

In order to satisfy its tax obligation, Malton contracted with Cannon Valley Recovery Company, a division of Cannon, to liquidate certain personal property. Cannon sold the property by auction on March 27, 1993. The

---

1. Malton filed its return for first quarter 1992 taxes on June 18, 1992. Minnesota processed the return on July 23, 1992. Malton filed its return for second quarter 1992 taxes with the state on July 31, 1992. Minnesota processed the return on October 1, 1992. Malton filed a return for third quarter 1992 taxes on October 31, 1992. Minnesota processed the return on December 2, 1992. Minnesota subsequently filed a notice of tax lien with the St. Louis County Recorder's office and the Minnesota Secretary of State for the three tax quarters on January 15, 1993.

2. Pursuant to 26 U.S.C. §§ 6321 and 6322, the United States made an assessment and demand for federal withholding taxes on October 5, 1992. The United States subsequently filed a notice of tax lien for second quarter 1992 taxes with the

Minnesota Secretary of State's office on January 8, 1993.

3. Minnesota's lien against Malton's property arose, according to state law, upon the date of the assessment of the tax. Minn.Stat. § 270.69 (1992). The date of assessment is the date a return was filed or the date a return should have been filed, whichever is the later. Minn.Stat. § 270.65 (1992).

The United States' lien against Malton's property arose on the date of assessment: October 5, 1992. See 26 U.S.C. §§ 6321 and 6322. As the respective statutes indicated, assessment under Minnesota state law and under federal law differ substantially.

net proceeds of the sale, after payment of Cannon's commission, were $108,803.74. Minnesota served Cannon with a notice of levy on March 8, 1993. The United States served Cannon with a notice of levy on March 30, 1993. Confronted with the competing notices of levy on the sale proceeds, Cannon brought an interpleader action to determine which tax authority to pay.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The sole issue before the court is whether Minnesota's tax liens on Malton's property are sufficiently choate as a matter of federal law to preempt a federal tax lien established on October 5, 1994.[4]

■ Where a federal tax lien and a lien created by state law create competing claims, federal law determines the priority between the federal and state tax liens. *Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). Under federal law, the priority of a lien depends on the time the lien attached to the property in question and became choate. *United States v. City of New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954). *New Britain* defines choateness as when the lien is perfected "in the sense that there is nothing more to be done ... when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *Id.* If the liens are both perfected and choate, the priority of the lien is then determined by the principle of "first in time is the first in right." *Id.*

■ Minnesota argues that the liens created under state law became choate under the *New Britain* test at the time of assessment. Minnesota law provides that the assessment date of the lien is the date the return is filed

or the date the return should have been filed, whichever is later. Minn.Stat. § 270.65 (1992). Minnesota claims the identity of the lienor (the State of Minnesota) is fixed, the property subject to the lien is known (all the property of the taxpayer), and the amount owed by the taxpayer (the sum admitted on the return) is established at the time the return is filed.

■ The United States' argues, however, that in order for a state lien to be choate under *New Britain*, the State must know the amount of the lien with certainty. In support of this contention, the United States makes two arguments. First, the United States argues that, under the Supreme Court decision in *United States v. Vermont*, an assessment is only choate if it is similar to the federal assessment. In *Vermont*, the Supreme Court held that an antecedent state tax lien arising under a statute modeled after 26 U.S.C. §§ 6321 and 6322 was sufficiently choate to obtain priority over a later federal tax lien arising under the same provisions. *United States v. Vermont*, 377 U.S. 351, 358, 84 S.Ct. 1267, 1271, 12 L.Ed.2d 370 (1964). Under the Vermont statute, the state lien arose when the commissioner of taxes made an assessment and demand for $1,628.15. *Id.* at 352, 84 S.Ct. at 1268. The Court held that when the state makes an assessment and demand in a manner similar to the federal government, the assessment will establish a choate lien that is entitled to obtain priority over a subsequently filed federal lien. From *Vermont*, it is clear that a state is not required to do more than the federal government in order to secure a lien which can preempt a later assessed federal lien.

■ The court does not believe *Vermont* requires that for an assessment to be choate, it must be assessed exactly as a federal assessment, i.e., the assessment must include a demand for a fixed amount of taxes. As previously stated, Minnesota's statute does not require the commissioner to make a formal assessment and demand for unpaid taxes before the state has a lien against the taxpayer's property. The Supreme Court in

4. Minnesota's assessment date of October 31, 1992 for the third quarter taxes is subsequent to the United States' first assessment date of Octo-

ber 5, 1992; therefore, Minnesota concedes it does not have priority to any amount beyond the first and second quarter tax periods.

*Vermont* was not addressing the minimum that could possibly satisfy the choateness requirement; rather, the Supreme Court merely rejected the argument that a State must do something more than the federal government in order to secure a lien which could preempt a federal lien. *Vermont,* 377 U.S. at 358, 84 S.Ct. at 1271.

The United States also argues that the Ninth Circuit's decision in *In re Priest* should be relied on to hold that Minnesota's liens are not choate at the time the returns were filed. *In re Priest,* 712 F.2d 1326, 1328 (9th Cir.1983), *modified,* 725 F.2d 477 (1984). In *Priest,* the California statute in question provided that a perfected and enforceable state lien arose on the date the return was received by the director. *Id.* at 1328. California argued this amounted to "self-assessment" and fulfilled the *New Britain* requirements of choateness. The district court agreed with the state of California. The Ninth Circuit, however, held that "the mere receipt of a delinquent State tax return is too vague and indefinite a standard by which to establish a lien that is capable of taking priority over a federal lien." *Id.* at 1329. The court stated:

> Significant delays might well occur before there was even any acknowledgement of the director's receipt of the delinquent return, or any administrative act by which the State acknowledged in its own accounts that the taxpayer is liable for unpaid taxes, or the precise amount of that delinquency, or the amount of penalty, interest and fees.

*Id.* The Ninth Circuit based this determination on the language in *New Britain* that a lien is not choate unless the amount is established. *Id.* (citing *New Britain,* 347 U.S. at 84, 74 S.Ct. at 369).

This court declines to adopt the reasoning of the Ninth Circuit. Nothing in this court's reading of *New Britain* supports the conclusion that preciseness in the amount of tax owed is necessary. The choateness requirement provides assurance that no contingencies are going to arise which prevent the lien from becoming perfected. *See United States v. Security Trust & Savings Bank,* 340 U.S. 47, 50–51, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950). In *Security Trust,* the court stated that "numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or inchoate—merely a *lis pendens* notice that a right to perfect a lien exists." *Id.* at 50, 71 S.Ct. at 113. The doctrine of choateness was established to require that a lien be enforceable and not contingent on future events before it could defeat a federal tax lien. *New Britain,* 347 U.S. at 86–87, 74 S.Ct. at 370–71 (quoting *Security Trust,* 340 U.S. at 50, 71 S.Ct. at 113). Minnesota's tax liens were not contingent on future events, and by operation of state statute, were summarily enforceable. Minn.Stat. § 270.69, subd. 4 (1992). The extension of the choateness requirement to require certainty in the amount of the lien is inconsistent with the necessity to safeguard against unknown contingencies.

The Eighth Circuit Court of Appeals considered a dispute between competing tax liens, a state lien for sales taxes and a federal tax lien for unpaid withholding taxes in 1967. *United States v. First Nat'l Bank & Trust Co. of Fargo, North Dakota,* 386 F.2d 646, 648 (8th Cir.1967). In *First Nat'l Bank,* the North Dakota statute in question determined that a state lien for sales tax became a lien on the last day of the month immediately following the taxable quarter. *First Nat'l Bank,* 386 F.2d at 647. The court held that this statute did not establish a lien that was sufficiently choate to preempt a federal lien as the taxpayer had not even filed a return. *Id.* at 648. The court stated the lien for sales taxes was not "specific, perfected and choate," as the taxpayer had not filed any "sales tax returns disclosing its sales tax liability and the state had made no attempt to determine the amount of such tax or make an assessment thereof." *Id.* Under Minnesota law, however, when a return is filed it contains the taxpayer's disclosure of its tax liabilities.

Minnesota's tax structure provides for a self-assessing mechanism in order to enable the state, on certain occasions, to preempt the federal liens. Congress, in designing its tax structure, could have chosen a similar system in order to obtain a federal lien,

**1252**

rather than requiring a formal assessment which includes liability calculation and demand. Accordingly, the court finds that Minnesota's tax liens were choate at the time of Minnesota's assessment, i.e., the date the returns were filed, June 18, 1992 and July 31, 1992, respectively. Applying the "first in time is the first in right" principle, Minnesota's tax liens have priority over the federal tax lien which was not assessed until October 5, 1992.

The facts in this case also indicate that, at the very least, Minnesota's tax liens were sufficiently choate under the *New Britain* test at the time of processing. The Minnesota Department of Revenue has a computer system that is programmed to automatically compute interest and penalties for sales and withholding tax liabilities that are entered into the system. By processing the forms, Minnesota took administrative action that established that the taxpayer was liable to the State of Minnesota for unpaid taxes, including the amount of the unpaid taxes and the amount of any penalty and interest. *See In re Priest,* 712 F.2d 1326, 1328 (9th Cir.1983), *modified,* 725 F.2d 477 (1984). The lienor was known (the State of Minnesota), all of the property of the taxpayer was attached, and the amount including principle, penalties, and interest was known. The only variable that continued to change was the applicable interest, which changes daily. Minnesota's statutory assessments for the first and second quarter 1992 taxes certainly became choate at the time of processing, July 23, 1992 and October 1, 1992, respectively.

### CONCLUSION

The court holds that Minnesota's tax liens for the first and second tax quarters were sufficiently choate at the time the returns were filed to obtain priority over the federal lien assessed October 5, 1992. Minnesota's tax liens were also sufficiently choate at the time the state processed the filed returns. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant State of Minnesota's motion for summary judgment is granted;

2. Defendant United States' motion for summary judgment is denied;

3. Plaintiff Cannon will pay the defendant State of Minnesota the sum of $34,327.58 from the interpleader fund, plus applicable interest.

4. Plaintiff will pay the defendant United States the remaining sum in the interpleader fund.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**