# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-1927

———————

State of Minnesota, Department of        *
Revenue,                                 *
                                         *
        Appellee,                  *
                                         *    Appeal from the United States
    v.                                   *    District Court for the
                                         *    District of Minnesota
United States of America,                *
                                         *
        Appellant.                 *

———————

Submitted:  February 8, 1999

Filed:  July 7, 1999

———————

Before McMILLIAN, LAY and MURPHY, Circuit Judges.

———————

McMILLIAN, Circuit Judge.

     The United States appeals from a final order entered in the District Court for the District of Minnesota granting summary judgment in favor of the State of Minnesota and denying summary judgment to the United States, holding that the state tax liens were choate, as of the time of filing of the state tax returns and not when processed.  For reversal, the United States argues that the state tax liens were not established at the time the state tax returns were filed because, under state law, the state must take administrative action to acknowledge taxpayer liability before its liens can be perfected, and thus "choate," under federal law for purposes of determining

relative priority. For the reasons discussed below, we reverse the judgment of the district court and remand the case to the district court with directions to enter summary judgment in favor of the United States.

## JURISDICTION

The district court had subject matter jurisdiction over this wrongful levy suit brought pursuant to 26 U.S.C. § 7426 under 28 U.S.C. § 1346(e). The United States filed a timely notice of appeal. See 28 U.S.C. § 2107(b) (notice of appeal in a civil case must be filed within 60 days of judgment when the United States is a party); Fed. R. App. P. 4(a)(1)(B). This court has jurisdiction over this appeal under 28 U.S.C. § 1291.[1]

## BACKGROUND

The relevant facts were stipulated. On June 2, 1992, the taxpayer, Prime Factors Communications, Inc., filed federal and state employment tax returns for several quarters, including all four quarters of 1991 and the first quarter of 1992, the periods at issue in this appeal. The taxpayer did not pay the taxes that it reported as due on its federal and state returns. The IRS assessed the unpaid federal taxes for the quarters at issue on August 3 and August 10, 1992. By law, federal tax liens upon the taxpayer's property for those liabilities arose on that date. See 26 U.S.C. §§ 6321,

---

[1]The district court's judgment provides that the state's motion for summary judgment is granted. In an action for money, specification of the amount of monetary award generally is an essential element of the judgment. See United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 233-35 (1958). It is sufficient, however, if the judgment specifies the means of determining the amount due. See id. at 234. Here, the summary judgment is, in effect, a judgment that the state is entitled to recover the amount ($14,378) that it sought in its complaint. Cf. Goodwin v. United States, 67 F.3d 149, 151 (8th Cir. 1995) ("a judgment may be final if only ministerial tasks in determining damages remain") (citation and internal quotations omitted).

6322. The IRS filed a notice of federal tax lien on January 14, 1993, reflecting a total federal tax liability due from the taxpayer of $248,658.33.

The state processed the taxpayer's state employment tax returns for the period at issue by entering the taxpayer's liability into its computer records, on August 20, 1992, after the date the IRS assessed the taxpayer's federal tax liabilities at issue. The taxpayer's state tax liability for the period at issue totaled $14,378.32.

On June 21, 1996, Charles and Lorilee Leininger purchased certain property belonging to the taxpayer. Prior to the sale, the IRS served on the closing agent for the sale a notice of levy with respect to the taxpayer's unpaid federal employment taxes, including the taxes due for the quarters at issue. Pursuant to the levy, the IRS received $14,579.22 of the sale proceeds.[2]

The state filed its complaint in this action on March 3, 1997, and an amended complaint on September 23, 1997. The state alleged that the IRS had wrongfully levied upon $14,378.32 of the sales proceeds, because the state's tax liens were entitled to priority over the federal tax liens. The United States and the state filed cross-motions for summary judgment. The state contended that, under Minn. Stat. § 270.69(1), a lien for state taxes arises on the date of the assessment of the tax, and that under Minn. Stat. § 270.65, the date of the assessment is the later of the date the return is filed or the date on which the return is due. The state thus argued that its tax liens became choate, on June 2, 1992, the date the returns were filed, and were therefore entitled to priority over the federal lax liens which arose on August 3 and 10, 1992, the dates the federal taxes were assessed. In support of its argument, the

---

[2]The IRS was paid after deductions were made for settlement charges, delinquent property taxes, and payments to other creditors. The Minnesota Department of Economic Security received $16,386.40 and the Minnesota Department of Revenue received $3,723.34 for other tax liabilities. These other payments from the proceeds are not in dispute.

-3-

state relied on <u>Cannon Valley Woodwork, Inc. v. Malton Construction Co.</u>, 866 F. Supp. 1248 (D. Minn. 1994) (<u>Cannon Valley</u>), a case in which the district court held that Minnesota tax liens had priority over those of the United States.

The United States argued that the state's tax liens did not become choate, until the returns were actually processed by the state on August 20, 1992, a date after the federal tax liability had been assessed, and that the federal tax liens were thus entitled to priority over the state tax liens. The United States relied on <u>In re Priest</u>, 712 F.2d 1326, 1329 (9th Cir. 1983), <u>modified</u>, 725 F.2d 477 (1984), in which the Ninth Circuit, interpreting a California statute similar to Minn. Stat. §§ 270.65, .69(1), held that the "mere receipt" of a state tax return was insufficient "to establish a lien that is capable of taking priority over a federal lien."

Following arguments on the motions, the district court ruled from the bench and granted summary judgment in favor of the state and denied the motion of the United States. The district court found that the state's tax liens became choate upon the filing of the taxpayer's returns, adopting the rationale of <u>Cannon Valley</u> and rejecting the Ninth Circuit's reasoning in <u>In re Priest</u>. The district court ruled that the state's tax liens were "established" and "summarily enforceable" as of the date the taxpayer filed its returns and "not contingent on future events." Accordingly, the district court ruled that the state's tax liens were prior to those of the United States and that the state was entitled to recover. This appeal followed.

### DISCUSSION

The district court's grant of summary judgment is reviewed *de novo*. <u>See Bremen Bank & Trust Co. v. United States</u>, 131 F.3d 1259, 1264 (8th Cir. 1997) (<u>Bremen Bank</u>); <u>see also</u> <u>McDermott v. Zions First Nat'l Bank</u>, 945 F.2d 1475, 1478 (10th Cir. 1991) (district court's finding that a federal tax lien has priority over a state tax lien is reviewed *de novo),* <u>rev'd on other grounds sub nom. United States v.</u>

McDermott, 507 U.S. 447 (1993) (McDermott)). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This case was tried on the basis of stipulated facts and the sole issue is a question of law, that is, whether the state tax liens were sufficiently choate as a matter of federal law so as to be entitled to priority over the federal tax liens.

The lien provisions of the Internal Revenue Code are intended to insure prompt and certain enforcement of the tax laws. See United States v. National Bank of Commerce, 472 U.S. 713, 721 (1985); United States v. Rodgers, 461 U.S. 677, 683 (1983). When a person liable to pay a federal tax fails to do so after a demand for payment is made, the amount of the tax, together with interest, additions, penalties, and costs, becomes a lien in favor of the United States upon all real and personal property and all rights to property belonging to the delinquent taxpayer. See 26 U.S.C. § 6321; Bremen Bank, 131 F.3d at 1262-63. The lien arises automatically when the assessment is made and continues until the taxpayer's liability is either satisfied or becomes unenforceable due to the lapse of time. See 26 U.S.C. § 6322. An assessment is "a bookkeeping notation . . . made when the Secretary [of the Treasury] or his [or her] delegate establishes an account against the taxpayer on the tax rolls." Laing v. United States, 423 U.S. 161, 170 n.13 (1976); see 26 U.S.C. § 6203.

State law determines the nature and the extent of a taxpayer's interest in "property." See Aquilino v. United States , 363 U.S. 509, 513 (1960); United States v. Bess, 357 U.S. 51, 55 (1958); Little v. United States, 704 F.2d 1100, 1105 (9th Cir. 1983). Federal law, however, governs the relative priority accorded to the competing liens asserted against the property of the delinquent taxpayer. See Aquilino v. United States, 363 U.S. at 513-14. "Federal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purposes of federal law

is governed by the common-law principle that 'the first in time is the first in right.'" McDermott, 507 U.S. at 449 (citations omitted); see United States v. Equitable Life Assurance Soc'y, 384 U.S. 323, 327-30 (1966); United States v. City of New Britain, 347 U.S. 81, 87 (1954) (New Britain); cf. Bremen Bank, 131 F.3d at 1263 (discussing modification of common law rules by Federal Tax Lien Act of 1966). "Under federal law, the priority of a lien depends on the time the lien attached to the property in question and became choate." Cannon Valley, 866 F. Supp. at 1250, citing New Britain, 347 U.S. at 84. A state-created lien is "choate" for "first in time" purposes only when it has been "perfected" in the sense that there is nothing more to be done, i.e., when "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." New Britain, 347 U.S. at 84; accord United States v. Vermont, 377 U.S. 351, 354-55 (1965); see also McDermott, 507 U.S. at 449. The test for choateness or perfection also requires that the creditor have the right to summarily enforce its lien. See United States v. Vermont, 377 U.S. at 359 (holding state's assessment choate where the "assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt") (quoting Bull v. United States, 295 U.S. 247, 260 (1935)); Monica Fuel, Inc. v. IRS, 56 F.3d 508, 513 (3d Cir. 1995); In re Terwilliger's Catering Plus, Inc., 911 F.2d 1168, 1176 (6th Cir. 1990) (holding a "state lien holder must show that he [or she] had the right to enforce the lien at some time prior to the attachment of the federal lien"), cert. denied, 501 U.S. 1212 (1991).

The issue to be decided in this case is whether, under federal law, the state tax liens were sufficiently choate upon the taxpayer's filing of its tax returns to prime the federal tax liens. The United States argues that, regardless of state law, the mere receipt by the state of a tax return is insufficient to meet the federal standard for choateness, because such receipt does not establish the amount of the taxpayer's liability or of the liens themselves. Under Minnesota law, the United States contends, additional steps are required to establish the amount of the state tax liens and to permit the state to enforce the liens, and federal law regarding choateness requires a

state to take some action to acknowledge a liability before a lien can be perfected. As a result, the United States argues that the state tax liens were not perfected and were not entitled to priority over the federal liens.

The state tax liens at issue arose by virtue of Minnesota law, which provides, in relevant part:

> The tax imposed by any chapter administered by the commissioner of revenue, and interest and penalties imposed with respect thereto, including any recording fees, sheriff fees, or court costs that may accrue, shall become a lien upon all the property within this state, both real and personal, of the person liable for the payment or collection of the tax . . . from and after the date of assessment of the tax.

Minn. Stat. § 270.69(1). "For purposes of taxes administered by the commissioner [i.e., taxes due as shown on a return], the term 'date of assessment' means the date a return was filed or the date a return should have been filed, whichever is later . . . ." Id. § 270.65. Thus, under state law, the state tax liens at issue arose when the taxpayer filed its returns on June 2, 1992, two months before the federal taxes at issue were assessed.

State law, however, and a state's own characterization of its liens for purposes of determining priority do not control this issue. See William T. Plumb, Jr., Federal Tax Liens 180 (3d ed. 1972) ("Local statutory provisions that fix a tax lien date prior [to the time the lien becomes choate] must be ignored for the purpose of resolving the federal-state priority question."). "Otherwise, a State could affect the standing of federal liens, contrary to the established doctrine, simply by causing an inchoate lien to attach at some arbitrary time even before the amount of the tax, assessment, etc., is determined." New Britain, 347 U.S. at 86 (footnote omitted). Accordingly, state tax liens are not necessarily perfected on the date a taxpayer files a return simply

because state law provides that the "date of assessment" with regard to taxes shown due on a return is the date the return is filed. Rather, we must still determine if the state tax liens are sufficiently perfected as of that date under federal law.

In our view, the state tax liens at issue were not choate as of the date the taxpayer filed its returns and the state tax liens therefore are not entitled to priority. Despite the fact that state law provides that tax liens arise on the date on which the taxpayer filed its returns, state law also provides that "[t]he commissioner *shall* make determinations, corrections, and assessments with respect to state taxes, including interest, additions to taxes, and assessable penalties." Minn. Stat. § 289A.35 (emphasis added). In addition, when a taxpayer has filed a return, "the commissioner shall examine the return and make any audit or investigation that is considered necessary." Id. Therefore, even after a return is filed, the commissioner is required to examine the return and to make a determination of the taxpayer's liability. Beyond doubt, it is this determination that formally establishes the amount of the taxpayer's liability.

Further, Minnesota law also provides that "[i]f a withholding or sales or use tax is not paid within the time specified for payment, a penalty must be added to amount required to be shown as tax." Minn. Stat. § 289A.60(1). Therefore, in a case such as this where withholding taxes were not timely paid, state law required the commissioner to add a penalty to the tax liability. This penalty is not computed until a tax return is processed. Cannon Valley, 866 F. Supp. at 1252. Also upon processing, interest due on the liability is computed.

As a result of these state law provisions, we hold that the amounts of the state tax liens at issue here were not established on the date the returns were filed and that state tax liens were therefore not perfected and choate on that date. The returns filed by the taxpayer had not been examined, the taxes owed had not been determined by the commissioner, and the delinquency penalties and interest had not been computed

-8-

and added to the amount of the tax, all of which is required under state law. Thus, pursuant to state law, the state has done that which is expressly prohibited, that is, it has "affect[ed] the standing of federal liens . . . simply by causing an inchoate lien to attach at some arbitrary time even before the amount of the tax is determined." New Britain, 347 U.S. at 86.

Moreover, we also note that because of these additional statutory provisions, the state tax liens were not summarily enforceable. While a lien is considered summarily enforceable even though ministerial acts which do not affect the viability of the lien remain to be done, the acts described above as required by state law cannot be characterized as ministerial. After the taxpayer filed its returns, it remained the statutory duty of the commissioner to examine the returns and determine its liabilities, and to calculate and add to the unpaid tax the required penalty for non-payment and the interest that was due. Only then could notice and demand for payment of the amount due be sent. See Minn. Stat. § 270.70(2)(a). Notice and demand for payment must be sent before a levy can be made. See id. Thus, substantial contingencies remain before the state tax liens could be enforced.

We note that, in addition to the requirements of state law, federal law regarding choateness also requires that a state take some administrative action to acknowledge formally a liability before the amount of the lien can be deemed "established" and the lien perfected. See New Britain, 347 U.S. at 86. For example in In re Priest, a California statute provided that a perfected and enforceable state tax lien for an unpaid tax liability shown as due on a return arose at the time the tax return was filed. California characterized the effect of the filing of the delinquent state return as "self assessment" and argued that this admission of liability by the taxpayer satisfied the New Britain test for choateness. The Ninth Circuit disagreed and held that the statute cannot be deemed to create liens that are sufficiently choate under New Britain. See 712 F.2d at 1329. The court held that "a lien cannot arise prior to the taking of any administrative steps to establish the lien" because "[t]he mere receipt of a delinquent

State tax return [under California law] is too vague and indefinite." Id., 725 F.2d at 478. The court observed that

> [s]ignificant delays might well occur before there was even any acknowledgment of the director's receipt of the delinquent return, or any administrative act by which the State acknowledged in its own accounts that the taxpayer is liable for unpaid taxes, or the precise amount of that delinquency, and the amount of penalty, interest and fees.

Id., 712 F.2d at 1329.

In re Priest has been followed by other courts. In Baybank Middlesex v. Electronic Fabricators, Inc., 751 F. Supp. 304, 310 (D. Mass. 1990) (citations omitted), the district court held that "in order for the amount of the state lien to be established, there must be 'some activity by the State to fix the taxpayer's liability.'" The state liens at issue had priority over the federal liens because the state had acknowledged in its own accounts that the taxpayer was liable for unpaid taxes. See id. The district court also noted approvingly that the state had calculated the interest due on the liability and included that amount in the notice of lien. See id. Because these steps had been taken before the federal lien arose, the state lien was choate since there was nothing more to be done. See id.

As noted above, the district court relied upon Cannon Valley, 866 F. Supp. 1248, and declined to follow In re Priest. Cannon Valley involved the same statutes at issue in this case, i.e., Minn. Stat. §§ 270.65, .69. The district court concluded that a lien arising under the statutes was choate under federal law at the time of assessment, the date a tax return was filed. See 866 F. Supp. at 1252. The district court rejected the argument of the United States that a state assessment was only choate if it was similar to the federal assessment, see id. at 1250-51, as well as its contention that, as in In re Priest, preciseness in the amount of tax owed is necessary

for the lien to be choate.  See id. at 1251.  Instead, the district court interpreted the doctrine of choateness to require that "a lien be enforceable and not contingent on future events before it could defeat a federal tax lien."  Id. at 1251.  The district court found that under state law Minnesota tax liens were not contingent on future events and were summarily enforceable and therefore choate.  See id.

We believe the analysis in Cannon Valley improperly discounted the importance of preciseness in the amount of tax owed in the New Britain test for choateness.  In our view, the plain language of New Britain requires the amount of the lien to be established, that is, determined, before a state-created lien can be considered choate.  See 347 U.S. at 84.  Certainly, more had to be done in the present case, and if the Supreme Court had intended to require only that the lien, i.e., the taxpayer's liability in general, had to be established, it could have said so.  Instead, it stated that the amount of the lien had to established.  Moreover, in both New Britain and Vermont, the Court refers to the requirement that the amount of the lien be "certain."  See id. at 86; see also Vermont, 377 U.S. at 357.  The Ninth Circuit was therefore correct in emphasizing this requirement in In re Priest and the district court in Cannon Valley was wrong to discount it.

In addition, we disagree with the finding in Cannon Valley that the Minnesota tax liens were free from contingencies upon the taxpayer's filing of its return and summarily enforceable.  See supra at 7-8.  In our view, state law requires additional administrative action to establish the liens.  The taxpayer's liabilities could not be collected until notice of the liabilities and demand for payment had been sent out, and notice and demand could not be sent until the returns had been processed and the tax, penalties, and interest determined by the commissioner.  Thus, the state tax liens are not summarily enforceable on the date of assessment, the date the return is filed or should have been filed.

Finally, we note that there is a critical factual distinction between <u>Cannon Valley</u> and the present case. In <u>Cannon Valley</u>, unlike the present case, the state had in fact "processed" the taxpayer's return before the IRS assessed the federal taxes. <u>See</u> 866 F. Supp. at 1249 n.1, 1252. The district court in <u>Cannon Valley</u> held, in the alternative, that at the very least, the state tax liens were choate at the time the returns were processed, noting that "[b]y processing the forms, Minnesota took administrative action that established that the taxpayer was liable to the State of Minnesota for unpaid taxes, including the amount of the unpaid taxes and the amount of any penalty and interest." <u>Id.</u> at 1252. Thus, for purposes of the <u>New Britain</u> test for choateness, "the lienor was known . . . , all of the property of the taxpayer was attached, and the amount including principal, penalties and interest was known." <u>Id.</u> (noting only variable that continued to change was applicable interest, which changed daily). Accordingly, while the primary rationale for the <u>Cannon Valley</u> analysis is at odds with that in <u>In re Priest</u>, the result (and the alternative holding) in <u>Cannon Valley</u> is in harmony with <u>In re Priest</u>. In the present case, on the other hand, the state did not process the taxpayer's returns until August 20, 1992, a date after the IRS assessed the federal taxes on August 3 and August 10, 1992.

Accordingly, the judgment of the district court is reversed and the case is remanded with instructions to the district court to enter summary judgment in favor of the United States.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-12-